**Melvin Earl WILLIAMS, Appellant,**

v.

**STATE of Texas, State.**

**No. 2–89–172–CR.**

Court of Appeals of Texas, Fort Worth.

Nov. 28, 1990.

Hardy Burke, Denton, for appellant.

Jerry Cobb, Criminal Dist. Atty., Ed Brownlee, Gwinda Burns, Asst. Criminal Dist. Attys., for State.

Before JOE SPURLOCK, II, MEYERS and DAY, JJ.

## OPINION

MEYERS, Justice.

Appellant, Melvin Earl Williams, appeals from a conviction by a jury for aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1990). Punishment was assessed by the jury at seventy-five years confinement in the Texas Department of Corrections.[1]

Appellant raises three points of error on this appeal. Point of error one complains that appellant's right to compulsory process was denied by the trial court when it refused to allow two crucial witnesses for appellant to testify before the jury. Appellant argues in his second point of error that the trial court committed reversible error in allowing a hearsay statement into evidence under the dying declaration exception. Thirdly, appellant states that the trial court committed reversible error in allowing an in-court identification where that in-court identification was based on an inadmissible pretrial identification by photographs.

We affirm.

On the evening of August 8, 1988, off-duty Denton Police Officer Randy Leavell received a phone call telling him something was wrong at the Howdy Doody convenience store at the corner of McCormick and Interstate 35 in Denton, Texas. Leavell, who was at his mother's home at the time, told his wife to call the police and went to the store at approximately 10:11 p.m. Upon arriving at the store, Leavell got everyone out of the building and followed a trail of blood to the freezer in search of the victim.

Officer Greg Hedges of the Denton Police Department was the first on-duty officer to arrive at the store. Hedges found blood in the freezer, and cases of beer in disarray. He also noticed the checkout counter drawers were partially pulled out. Hedges resecured the area and called for a detective and crime scene officer.

Detective Walter Hochheim arrived on the scene at approximately 10:20 p.m. the same evening. Hochheim watched Detectives Lewis and White take fingerprints from the doors, counters, and cash register area. After conducting a canvas of the area, Hochheim visited the victim, Victor Samakrone, in the hospital emergency room at approximately 11:00 or 11:15 p.m. Samakrone had an open gash in his throat and a puncture wound in his chest. Hochheim spoke to Samakrone in the emergency room and returned two days later to show him a photo lineup and discuss the incident at the store. Samakrone identified a photograph of appellant from the six that were shown to him by Hochheim. A probable cause arrest warrant for appellant was procured by Hochheim that same day.

During trial, appellant sought to introduce the testimony of a witness, Edgar Ridge, that another man, Terrel Arlandis "Terry" Paige, had told him that he had committed the crime for which appellant was charged. Appellant also sought to bring Paige to the witness stand so the jury could observe his appearance and hear him invoke his fifth amendment privilege against self-incrimination. The testimony of both Ridge and Paige was excluded by

1. Now the Texas Department of Criminal Jus-  tice, Institutional Division.

the trial court. Appellant made a bill of exception. He then put on the testimony of Paige. Ridge repeated his testimony, after which appellant repeated his request to introduce this testimony before the jury. The State objected to the testimony's lack of corroboration and the court ruled that neither witness could testify in front of the jury.

Appellant's first point of error complains that his right to compulsory process was denied when the trial court refused to allow Ridge and Paige to testify in the jury's presence.

■ Appellant reminds us that the right of a defendant to "have compulsory process for obtaining witnesses in his favor" is provided for by our Code of Criminal Procedure as well as our state and federal constitutions. *See* TEX.CODE CRIM. PROC.ANN. art. 1.05 (Vernon 1977); *see also* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. However, while this right of "compulsory process" may be fundamental, it is not absolute. *See Weaver v. State*, 657 S.W.2d 148, 150 (Tex.Crim.App. 1983) (en banc) (materiality and necessity required to subpoena out-of-state witness).

Regarding the court's exclusion of the testimony of Terry Paige, we note that Paige expressed in testimony outside the jury's presence that he would invoke his fifth amendment privilege against self-incrimination. Paige refused to give any testimony regarding the facts of this case. Appellant sought the introduction of Paige's testimony so that the jury could look at him and hear his invocation of his fifth amendment privilege.

■ Where a witness other than the accused, invokes the fifth amendment and declines to testify, such invocation is not permitted to be viewed by the jury. *Rodriquez v. State*, 513 S.W.2d 594, 595–96 (Tex. Crim.App.1974). Since no inference of guilt can be drawn against the declining witness, no inference of guilt or innocence can be made about the defendant. *Id.;* see also *Chambliss v. State*, 633 S.W.2d 678, 683 (Tex.App.—El Paso 1982), *aff'd,* 647 S.W.2d 257 (Tex.Crim.App.1983). Because Paige indicated he would invoke his fifth amendment privilege against self-incrimination if he testified before the jury, we find that the trial court properly excluded his testimony.

■ Appellant also contends that the trial court erred by disallowing the testimony of Edgar Ridge. Ridge was to testify concerning statements allegedly made to him by Paige concerning the incident for which appellant was charged. Appellant argues Ridge's testimony was admissible as an exception to the rule against hearsay under TEX.R.CRIM.EVID. 803(24) as a statement against interest. However, the trial court excluded Ridge's testimony because appellant failed to demonstrate corroborating circumstances clearly indicating the trustworthiness of the statement as required by the last sentence of TEX.R. CRIM.EVID. 803(24).

In *Reynolds v. State*, 744 S.W.2d 156, 161 (Tex.App.—Amarillo 1987, pet. ref'd), the court referred to established law as to corroborating evidence to support accomplice testimony to determine if the appellant's out-of-court statement to a police officer at the scene of his arrest for driving while intoxicated was sufficiently corroborated to fall under the exception to the rule against hearsay set out by Rule 803(24). The court used the test set out in *James v. State*, 538 S.W.2d 414, 416 (Tex.Crim.App. 1976) which reads as follows:

> The well-established test of the sufficiency of the corroborating testimony is to eliminate from consideration the evidence of the accomplice witness and then to examine the testimony of other witnesses to ascertain if there is inculpatory evidence which tends to connect the defendant with the commission of the offense. If there is other evidence of an incriminating nature, the corroboration is sufficient; otherwise it is not.

*Id.* (citing *Bentley v. State*, 520 S.W.2d 390 (Tex.Crim.App.1975)). Applying this rule to eliminate the hearsay testimony of Edgar Ridge and then examining the testimony of other witnesses for corroboration, we find no other testimony which agrees with Ridge's testimony. Corroborating evi-

dence should make testimony more likely true than not. *Warren v. State*, 514 S.W.2d 458, 468 (Tex.Crim.App.1974). We find that based upon the corroboration requirement set out by Rule 803(24) and appellant's failure to present evidence to corroborate this testimony in the manner required by *James*, the trial court's ruling on the admissibility of this testimony was proper. *James*, 538 S.W.2d at 416. Accordingly, appellant's first point of error is overruled.

In his second point of error appellant complains of the trial court admitting into evidence the hearsay statement of Dr. Tayem, the emergency room physician where Samakrone was taken after the robbery, under the dying declaration exception. Dr. Tayem was in the emergency room when Samakrone was brought in. Samakrone, who was in very serious condition, told Dr. Tayem how he was injured.

Dr. Tayem was allowed to testify at trial, over appellant's hearsay objection, on the basis that Samakrone's condition was so near death that the statements he made to Dr. Tayem were dying declarations constituting an exception to hearsay under Rule 804(b)(2) of the Texas Rules of Criminal Evidence. While these statements may have been made by Samakrone in the belief that his death was imminent, we also note that this exception requires the declarant to be unavailable to testify at trial. *See id.* In this instance, the declarant, Samakrone, was available and did testify at trial, thus, Dr. Tayem's testimony did not qualify as a dying declaration exception to the rule against hearsay and the admission of such testimony was error.

However, Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides that such error will not be reversible if "the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Id.* In this case, we note that Samakrone testified to the same matters as Dr. Tayem. They both testified about the manner in which Samakrone was injured and the description of his assailant. This testimony was further elaborated upon by

other witnesses. Thus, Tayem provided no evidence which was not already before the jury and the admission of her testimony could not have contributed to either appellant's conviction or punishment. *See Carrasquillo v. State*, 742 S.W.2d 104, 111 (Tex.App.—Fort Worth 1987, no writ) (admission of inadmissible character evidence of homosexuality harmless where such evidence already before jury). This error being harmless, we overrule appellant's second point of error.

Appellant's third point of error contends that the trial court committed reversible error in allowing an in-court identification where that in-court identification was based upon an inadmissible pretrial identification by photographs.

Appellant's photograph was chosen by Samakrone from an array of six photographs shown to him by Officer Hochheim two days after the robbery occurred. All of the subjects in the photographic lineup were black males, around six feet in height, between the ages of twenty to thirty and one of them had short hair. All of the subjects were shown frontally and by profile. Appellant argues that this photographic lineup was improper because, although appellant had all of the above-described characteristics, he was the only member of the lineup with short hair. The trial court took this objection under advisement but then overruled appellant's objection and allowed Officer Hochheim to testify regarding Samakrone's identification of appellant from the photographs.

In-court identifications are admissible only if the State shows by clear and convincing evidence that the testimony is not the fruit of an earlier, improper identification. *See Martinez v. State*, 437 S.W.2d 842, 849 (Tex.Crim.App.1969). The initial determination of taint is for the trial court to make. *Herrera v. State*, 682 S.W.2d 313, 318 (Tex.Crim.App.1984). However, a defendant who claims on appeal that a trial court erred in allowing the in-court determination has a difficult and heavy burden. *Id.* Unless it is shown by clear and convincing evidence that the complaining witness' identification was irrepa-

rably tainted, the appellate court will not reverse a conviction on these grounds. *Id.; Jackson v. State,* 628 S.W.2d 446, 448 (Tex. Crim.App.1982).

 A conviction based on an eyewitness identification at trial following a pretrial identification through the means of a photographic lineup will be set aside only if the photo identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Herrera,* 682 S.W.2d at 318. Viewing the circumstances of Samakrone's photographic identification of appellant we do not find there was a substantial likelihood of misidentification. Samakrone was an eyewitness to the crime and was within appellant's immediate presence for several minutes. He was close enough to notice the gap in appellant's teeth. The photographs from which appellant was identified were among five other pictures of subjects of the same race, age, and height as appellant. Some of these men, according to Detective Hochheim's testimony, had short hair as well. Accordingly, appellant's third point of error is overruled.

We affirm.