Edgar SAENZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00044–CR.

Court of Appeals of Texas,
El Paso.

Sept. 30, 1992.

Discretionary Review Refused
Feb. 3, 1993.

Rod Ponton, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORNE, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

A jury convicted Edgar Saenz, Appellant, of murder, coupled with a deadly weapon finding. The jury then assessed punishment at 40 years' imprisonment. Seeking review of the trial court's judgment, Appellant assigns eight points of error. We affirm.

In Point of Error No. One, Appellant argues that the trial court erred in failing to suppress his statement. Second, Appellant argues that the trial court erred in failing to grant Appellant authority to obtain an independent lab examination on blood evidence. In his third point of error, Appellant challenges the trial court's denial of a hearing to determine the admissibility of a witness's in-court identification of Appellant as the murderer. In Points of Error Nos. Four and Five, Appellant claims that the trial court erred in limiting his cross-examination of two witnesses. In Point of Error No. Six, Appellant complains of the trial court's denial of his attempt to call a witness to testify. Point of Error No. Seven challenges the trial court's admission of extraneous offense evidence. In Point of Error No. Eight, Appellant asserts the trial court erred in denying his motion for a new trial.

## Factual Background

In June 1990, a group of teenagers gathered at a party. The eighteen-year-old Appellant and other members of the Nasty Boys gang were among those in attendance. An argument ensued surrounding the possible gang affiliation of Jorge Villanueva, the victim, which resulted in Appellant fatally stabbing the victim and stabbing Ismael Dominguez in the leg. Appellant was arrested the following morning pursuant to a warrant. Shortly thereafter, he gave a statement admitting his involvement in the fight and his use of a knife. Appellant stated that he discarded the knife in a nearby desert area where it was retrieved by police. Laboratory analysis confirmed that blood found on the knife was consistent with the deceased's blood.

## Points of Error

■■ In Point of Error No. One, Appellant challenges the trial court's failure to suppress his statement. Without citation to authority, Appellant argues the statement should have been suppressed because it was obtained prior to Appellant being promptly taken to a magistrate after his arrest, in violation of Tex.Code Crim.Pro. Ann. art. 15.17 (Vernon Supp.1992). Article 15.17(a) requires an arresting officer to take an accused before a magistrate to be warned "without unnecessary delay." *See also* Tex.Code Crim.Pro.Ann. art. 14.06(a). However, even if the record exhibits an unnecessary delay, such "failure to comply with the statute does not automatically invalidate a confession." *Williams v. State,* 692 S.W.2d 671, 675 (Tex.Crim.App.1984). Appellant shoulders the burden to show that any delay was unreasonable and to show a causal connection between the confession and the allegedly unreasonable delay. *Bonner v. State,* 804 S.W.2d 580, 582 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); *Sallings v. State,* 789 S.W.2d 408, 414–15 (Tex.App.—Dallas 1990, pet. ref'd). The record indicates Appellant was arrested at approximately 8 a.m. and the statement was taken at 9:12 a.m. after which Appellant was taken before a magistrate

and warned at approximately 10 a.m. Thus, a total of two hours expired between the arrest and the magistrate's issuance of Appellant's warnings. We find that the two hour delay, under these circumstances, was not unreasonable.

Furthermore, Tex.Code Crim.Pro.Ann. art. 38.22 § 2(a) (Vernon 1979) expressly provides that the mandatory warnings to be issued prior to the taking of a statement by the accused may be issued by either a magistrate or the person to whom the statement is given. The record shows that Appellant was Mirandized[1] both at the time of his arrest and immediately prior to giving a statement. Accordingly, the mandates of the Texas Code of Criminal Procedure were properly followed, and the trial court properly admitted Appellant's statement into evidence. *See generally, Hollomon v. State,* 633 S.W.2d 939, 943 (Tex.App.—Austin 1982, pet. ref'd) (statement taken with proper warnings given by Rangers after valid arrest without warrant but prior to magistrate warnings—all within a few hours—was admissible). Point of Error No. One is overruled.

■■ In Point of Error No. Two, Appellant argues the trial court erred in denying his request for an independent laboratory test of bloody clothing belonging to Lucio Alcala, one of Appellant's fellow gang members. Appellant's request to obtain a blood-type analysis on Lucio Alcala was also denied. Again without citation to authority, Appellant concludes that the trial court's ruling denied him a fair trial because he desired to compare the blood on the shirt to that of Lucio Alcala. Assuming Alcala's blood did match the type of blood found on his own shirt, Appellant fails to assign any relevance to this fact which would have any tendency to make the existence of any consequential fact more or less probable. *See* Tex.R.Crim. Evid. 401.

Testimony indicated the blood taken from six different samples from the shirt was of a different type than that belonging to the deceased. Without any supporting

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

argument, we are left to hypothesize as to Appellant's reason for needing additional testing. Apparently, Appellant wished to challenge the veracity of the Department of Public Safety's test results or the conclusiveness of the test. Appellant's cross-examination testimony from the chemist confirmed that the other untested bloodstains on the shirt could be of a different type than the six randomly selected samples. Moreover, the chemist agreed that the only way to be sure that the additional blood was not different from the blood tested was to test all the blood on the shirt. Appellant's desired implication may have been that the deceased victim's blood was in fact on Lucio Alcala's shirt, thereby, implicating Alcala and arguably exculpating himself. Although Appellant was denied the opportunity to establish one way or the other whether Alcala's shirt contained some of the deceased's blood, testimony was presented to the jurors from which they could have considered such an implication. The jury was free to accept or reject any evidence including Appellant's implication. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992).

■ Central to Appellant's argument is his claimed right to discovery. However, there is no such general or mandatory right. Rather, Tex.Code Crim.Pro.Ann. art. 39.14 (Vernon 1979) instructs that an accused's right to discovery is within the sound discretion of the trial court. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex. Crim.App.1980), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Appellant's brief fails to provide any substantive explanation of how the additional blood analysis was material to his defense or harmed his defense in any specific manner. Because of such failure, we are unable to conclude that the trial court's ruling was outside "the zone of reasonable disagreement" and, thus, an abuse of discretion. *See generally, Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App.1992) (admission of DNA evidence); *Lazcano v. State*, 836 S.W.2d 654, 658 (Tex.App.—El Paso, 1992,

no pet. h.) (admission of extraneous offenses). Accordingly, we overrule Appellant's second point of error.

■ In Point of Error No. Three, Appellant asserts the trial court erred in denying his request for a hearing on the admissibility of a witness's in-court identification of Appellant as the perpetrator. When Ismael Dominguez identified Appellant as the one who had stabbed Villanueva, Appellant argued to the court that such identification was impermissibly tainted by an improper pretrial photographic array shown the witness by the police. The trial court ruled no such assertion would be considered due to Appellant's failure to present this argument during its pretrial hearing pursuant to Tex.Code Crim.Pro.Ann. art. 28.01 (Vernon 1989). Once again, Appellant fails to provide this Court with any authority in support of his point of error. Nevertheless, we address the substance of the point.

The purpose of a pretrial hearing on those matters listed in Article 28.01 [2] is to avoid delays during trial in disposing of such matters. *Johnson v. State*, 803 S.W.2d 272, 283 (Tex.Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). The oral motion for a hearing on this matter during trial failed to comport with the seven-day prior-to-trial requirement of Article 28.01; thus, the trial court did not err in denying Appellant's request to conduct a hearing on the witness's identification of Appellant unless he had demonstrated good cause for the untimeliness pursuant to Article 28.01, Section 2. *See Writt v. State*, 541 S.W.2d 424, 425–26 (Tex.Crim.App.1976). Since the record is devoid of any showing of good cause for the tardy request, no error is shown, and we overrule Point of Error No. Three.

■ Point of Error No. Four avers that the trial court erred by denying Appellant's attempt to cross-examine Yvonne Armendariz regarding a statement by Juan Alcala. Appellant sought to show Alcala's existing state of mind and to create an infer-

---

**2.** The provision relevant to this case is Section 1(6) of Article 28.01 pertaining to the suppres-

sion of evidence.

ence that the Alcalas were the true perpetrators by eliciting from Armendariz a statement that she had been told by Alcala not to say anything about him being present during the fight and stabbing. Without citation to any authority, Appellant argues the statements were admissible under an exception to the hearsay rule. We find it unnecessary to address the merit, if any, of the point since the declarant of the statement, Juan Alcala, admitted on cross-examination by Appellant to making such a statement. Regardless of the propriety of the trial court's ruling as to the hearsay character of the desired cross-examination, Appellant was not harmed by the exclusion of this testimony because he elicited the same testimony from the declarant, and we perceive no violation of the constitutional right to cross-examine witnesses. *Kinnamon v. State*, 791 S.W.2d 84, 102 (Tex. Crim.App.1990); *Dedesma v. State*, 806 S.W.2d 928, 932 (Tex.App.—Corpus Christi 1991, pet. ref'd). Consequently, Point of Error No. Four is overruled.

■ In his fifth point of error, Appellant argues that the trial court erred in limiting his cross-examination of Reymundo Alcala, who was fourteen years old at the time of trial, as to his prior run-ins with the juvenile authorities. Appellant cites *Davis v. Alaska*, 415 U.S. 308, 316–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974), for the proposition that refusal to allow an accused to cross-examine a prosecution witness regarding his established record as a juvenile delinquent was error. *Davis* can be distinguished from the instant case on the facts. In *Davis*, the witness, Richard Green, sixteen years old at the time of the juvenile offense and seventeen at the time of his testimony, was at the latter time, on probation for the offense of burglary after having been adjudicated a juvenile delinquent, whereas in the instant case, Reymundo Alcala had never been arrested, nor had he ever appeared before a judge. The witness testified, outside the presence of the jury, that the juvenile authorities only took him home to his parents and that the last time he had been picked up was when he was nine years old. Furthermore, Reymundo testified he was unaware of any charges

presently pending against him by the juvenile authorities. Contrary to *Davis*, the instant record is devoid of any showing that the witness might have had some "possible biases, prejudices, or ulterior motives" to testify in the State's favor as a result of his previous run-ins with the juvenile authorities. 415 U.S. at 316, 94 S.Ct. at 1110. Accordingly, we find the trial court did not abuse its discretion in precluding Appellant's cross-examination of Reymundo regarding his past juvenile history. We overrule Point of Error No. Five.

■ In Point of Error No. Six, Appellant challenges the trial court's denial of his attempt to call Lucio Alcala as a defense witness. At trial, Lucio's attorney informed the trial court that his client would invoke his Fifth Amendment privilege against self-incrimination. Prior to the instant trial, Lucio was apparently not a suspect in the murder; however, his attorney stated he believed some of the testimony of witnesses implicated his client. As a result, Lucio took the stand outside the presence of the jury and invoked his Fifth Amendment privilege as to any and all testimony he might give in the instant case, and the trial court ruled Appellant would not be permitted to call Lucio to the stand before the jury. Appellant, in an attempt to cast blame for the murder on Lucio, was not entitled to call Lucio to the stand in order that the jury might hear him invoke his Fifth Amendment privilege and decline to testify. *Williams v. State*, 800 S.W.2d 364, 367 (Tex.App.—Fort Worth 1990), pet. ref'd, 805 S.W.2d 474 (Tex.Crim.App.1991).

■ Without citation to authority, Appellant argues Lucio waived his Fifth Amendment privilege by voluntarily giving a statement to the police on the day after the murder. Regardless of the admissibility of a statement given to the police as a potential witness, the issuance of such an out-of-court statement does not in and of itself constitute a waiver of the witness's right not to incriminate himself in live testimony at trial. Logically, the broad range of potential questions to be posed a witness at trial would likely seek responses beyond

the scope of any statement given prior to trial, thereby resulting in a diminution of the witness's Fifth Amendment privilege. Since a witness's constitutional privilege against self-incrimination overrides an accused's right to compel a witness to testify or invoke the privilege before the jury, we hold that the trial court did not err in prohibiting Appellant from calling Lucio Alcala to the stand. *See Bridge v. State,* 726 S.W.2d 558, 567 (Tex.Crim.App.1986). Point of Error No. Six is overruled.

■ In Point of Error No. Seven, Appellant complains that the trial court erred by permitting the State to violate the motion in limine precluding the State from referring to the Appellant as a "knifer." At first blush, Appellant's point appears to assert prosecutorial misconduct by referring to Appellant as a "shanker" contrary to the order in limine. However, the thrust of Appellant's argument is that the State by using the name "Shanker" suggested extraneous offenses and prejudicially tainted Appellant as a criminal generally. During direct examination, Juan Alcala testified his nickname was Toones, his twin brother's (Lucio's) nickname was Loonies, and Appellant's nickname was Shanker. Upon his objection regarding violation of the motion in limine,[3] the court ruled that Appellant had opened the door regarding nicknames by asking each of the State's witnesses to reveal their nickname. Subsequently, the witness was asked to spell the nickname on paper to illustrate the name to the jury after which no further testimony concerning the name was elicited.

■ Initially, we note neither the granting nor denial of a motion in limine is alone sufficient to preclude admission of the challenged evidence or preserve error for appellate review. *See Webb v. State,* 760 S.W.2d 263, 275 (Tex.Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); *Hernandez v. State,* 825 S.W.2d 765, 770 (Tex.App.—El Paso 1992, no pet.). Thus, assuming the "extra-

neous offense" objection was sufficient, Appellant shoulders the burden to establish how the trial court abused its discretion in admitting the testimony. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991, on own motion for rehearing). Appellant wholly fails to advise this Court how the nickname "Shanker" constitutes evidence of an extraneous offense. Appellant fails to explain and we are unable to perceive how the fairly brief references to Appellant's nickname caused him to be tried for some extraneous offense. As a result, Appellant has failed to show how the trial court's ruling was outside the zone of reasonable disagreement. We will not substitute our judgment for that of the trial court. *Montgomery,* 810 S.W.2d at 391. Point of Error No. Seven is overruled.

■ In his last point of error, Appellant argues that the trial court erred in denying his motion for a new trial. As the record does not indicate an express ruling by the trial court, the motion for a new trial was apparently overruled by operation of law. Appellant's point is premised upon the alleged discovery of a witness who would have provided evidence contradicting the testimony of some of the State's witnesses. Without citation to authority, Appellant concludes the newly discovered evidence, if heard by the jury, would have affected the outcome of the trial.

■ Motions for new trial premised upon the alleged discovery of new evidence traditionally lack favor within the courts and are viewed with cautious scrutiny. *Drew v. State,* 743 S.W.2d 207, 225 (Tex. Crim.App.1987); *Martinez v. State,* 824 S.W.2d 688, 692 (Tex.App.—El Paso 1992, pet. ref'd). The trial court's ruling on the motion for new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jones v. State,* 711 S.W.2d 35, 36 (Tex.Crim.App.1986); *Martinez,* 824 S.W.2d at 692. The four requirements for obtaining a new trial based on newly dis-

---

**3.** Appellant also made a very general and cursory objection alleging that he would now "be tried for being a criminal, generally,...." We question the suitability of such a general and

vague objection in this regard. *Compare Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim. App.1991, on own motion for rehearing).

covered evidence require a defendant to show that:

- the evidence was unknown to the movant-defendant at the time of trial;
- the failure to discover the evidence was not due to movant-defendant's want of diligence;
- the evidence has materiality in that it would probably bring about a different result in another trial; and
- the evidence is admissible and not merely cumulative, corroborative, collateral or impeaching.

*Drew,* 743 S.W.2d at 226. *See also Jones,* 711 S.W.2d at 36–37; *Martinez,* 824 S.W.2d at 692.

▆ Even if an accused meets all of the above requirements, it is within the trial court's discretion to deny the motion if "under the circumstances of the particular case the credibility or weight of the new evidence is not such as would probably bring about a different result upon a new trial, . . . ." *Jones,* 711 S.W.2d at 37. Furthermore, the materiality requirement demands a showing that the evidence is probably true, admissible and not merely cumulative, corroborative, collateral or impeaching. *Boyett v. State,* 692 S.W.2d 512, 516–17 (Tex.Crim.App.1985); *Isaacs v. State,* 770 S.W.2d 76, 80 (Tex.App.—El Paso 1989, pet. ref'd). It is impossible to determine from Appellant's abbreviated argument and lack of reference to the record whether he met any of the requirements for obtaining a new trial. As a result of an inadequate record, we cannot say the trial court abused its discretion in denying the motion for a new trial. Therefore, Point of Error No. Eight is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.