Albert Hernandez **CONTRERAS**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 08–94–00105–CR.

Court of Appeals of Texas, El Paso.

Sept. 28, 1995.

Rehearing Overruled Dec. 13, 1995.

Martin Underwood, Comstock, David B. Fannin, Austin, and Mark Stevens, San Antonio, for Appellant.

Shane Phelps and Don Clemmer, Assistant Attorneys General of Texas, Austin, for the State.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Albert Hernandez Contreras appeals his conviction for the offense of capital murder. After the jury found Appellant guilty, the court assessed Appellant's punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division. We affirm.

### FACTUAL SUMMARY

On the evening of September 29, 1982, at approximately 8 p.m., Gail Box, whose father owned the Western Package Liquor Store in Pecos, received a telephone call from a relative that the store's silent alarm had been activated. The alarm was designed to activate upon the removal of a particular $20 bill from the cash drawer. Mrs. Box attempted

to call the store's manager, sixty-six year old Louise Broadus, to determine if it had been a false alarm. When Mrs. Broadus did not answer the telephone, Mrs. Box and her husband became alarmed and immediately went to the store. Living only 100 yards from the store, it took them less than two minutes to get there. They found Mrs. Broadus lying in a large pool of blood in front of the cashier's counter near the front door. Her glasses were lying on the opposite side of the cashier's counter. A trail of blood droplets led from her body to the area behind the counter and near the open cash register, which was empty except for some coins, or possibly a few one dollar bills. The autopsy revealed that Mrs. Broadus died as a result of multiple cut and stab wounds inflicted by a knife. Mrs. Box was able to determine that the register should have contained approximately $789.

Police found a paper bag containing a six-pack of George Killian's Red Beer, a brand sold by the Western Package store, on the sales counter immediately adjacent to the cash register. The bag was on the customer's side of the counter. A pair of blue rubber gloves used by Mrs. Broadus when cleaning was found on the cashier's side of the counter just a couple of feet from the cash register. Robert Barnett, a police investigator, lifted eighteen latent prints from the cashier's side of the counter in a small area between the rubber gloves and the cash register.

On the morning following the murder, Appellant went into the Town and Country Food Store in Pecos, and spoke to the store manager, Laura Gonzales. Appellant put some items on the counter, offered to buy Gonzales a coke, and "flashed" a large bundle of currency. Gonzales found this unusual because Appellant customarily did not have any money and he typically asked her to buy him something. When Gonzales asked Appellant where he had gotten the money, he told her, "Last night I did a transa." Gonzales told the jury that *transa* was a slang term for something illegal, like stealing. Appellant would not tell Gonzales where he had

done the "transa," but he bragged that it was one of the easiest ones he had ever done. Gonzales testified that she told a police officer about this conversation with Appellant, but that no one ever took a statement from her until 1986.

Broadus' murder remained unsolved for the next several years. In 1985 or 1986, Jesse Dominguez, an investigator with the Pecos Police Department, re-opened the investigation. Dominguez initially could not find the original investigation file, but he found the latent fingerprints while looking through a different case file. He sent the latent prints to the FBI along with known prints of Appellant and other suspects in 1986. An FBI fingerprint specialist, Richard Leas, compared those eighteen latent fingerprints with the known prints he had received. Of those eighteen lifts, only eleven of them were "latent prints of value."[1] From those latent prints of value, Leas positively identified seven impressions as belonging to Appellant. Leas concluded that Appellant had been on the cashier's side of the counter and had placed his hand on it at least five times. None of the prints of the other suspects matched any of the latent prints of value.

When Dominguez questioned Appellant about this offense in late 1986, Appellant admitted that he had been in Pecos on the date of the murder. He told Dominguez that he had bought "Red Gilliams beer" at the liquor store before, but he did not think he had bought any on the day of the murder. Appellant said that he had been with his girlfriend, Eva, and his brother that day. In 1990 or 1991, Laura Gonzales had another conversation with Appellant in which Appellant complained that they were trying to pin the Broadus murder on him again. Gonzales told Appellant, "I don't know how you guys could do that, you know. All you had to do was just hit her and knock her down and take the money and go." Appellant replied, "[w]hen you do something like that, you can't leave no evidence—no witnesses...." In addition to the incriminating statements Appellant made to Gonzales, he also told a former investigator for the district attorney's

1. Leas testified that the term "latent print of value" meant that the lift had enough ridge characteristics for it to be identified or not identified upon being compared with a known print.

office that he had killed Mrs. Broadus because she recognized him. After his indictment, Appellant made several statements to other inmates in which he admitted that he killed Mrs. Broadus, but he stated that the State could not prove it because his prints could have been left on the counter when buying cigarettes.

On April 12, 1993, more than ten years after the commission of this offense, a grand jury indicted Appellant for the capital murder of Louise Broadus. The State[2] elected not to seek the death penalty. Upon the jury's finding of guilt, the trial court automatically sentenced Appellant to life imprisonment. TEX.CODE CRIM.PROC.ANN. art. 37.0711, § 2 (Vernon Supp.1995).

### THIRD–PARTY GUILT EVIDENCE

In two related points of error, Appellant complains that the trial court improperly restricted his ability to present a theory of defense. In Point of Error One, Appellant contends that the trial court erred in refusing to allow him to present testimony and evidence that a third party, namely, Leon Jones, committed this offense. In Point of Error No. Two, Appellant contends that the trial court improperly restricted his right to voir dire the jury on this same theory. We will address Appellant's second point of error first.

### Restriction of Voir Dire

Prior to trial, the court granted the State's motion in limine and required that the defense approach the bench before discussing or offering any evidence that a person named Leon Jones had ever been a suspect in the instant case, or that he had been involved in, arrested, charged, or indicted for any offense, including murder.[3] The Court initially limited this ruling to voir dire, and in that regard, ruled that neither the State nor the defense could go into specific facts regarding

the case, including any evidence concerning Leon Jones. The court permitted the defense to ask during voir dire whether any of the venirepersons knew Leon Jones.

 The standard of review in a case where the defendant claims he was improperly restricted on voir dire is whether the trial court abused its discretion. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex.Crim.App.1991); *Godine v. State*, 874 S.W.2d 197, 199 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *DeLeon v. State*, 867 S.W.2d 138, 140 (Tex. App.—Corpus Christi 1993, pet. ref'd). In determining whether the trial court abused its discretion, reviewing courts look to the propriety of the question which the defendant sought to ask. *Nunfio*, 808 S.W.2d at 484; *DeLeon*, 867 S.W.2d at 140. Generally, a question during voir dire is proper if it seeks to discover a juror's views on an issue applicable to the case. *Nunfio*, 808 S.W.2d at 484; *DeLeon*, 867 S.W.2d at 140. Questions which probe into bias and prejudice against the applicable law are permissible. *Hogue v. State*, 711 S.W.2d 9, 27 (Tex.Crim. App.1986); *DeLeon*, 867 S.W.2d at 140. However, a party may not ask a veniremember to commit themselves as to how they would consider certain testimony prior to trial, *Hernandez v. State*, 508 S.W.2d 853, 854 (Tex.Crim.App.1974), nor may a potential juror be asked what he or she would do at any particular stage of the trial under a given set of facts. *Allridge v. State*, 762 S.W.2d 146, 163 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *DeLeon*, 867 S.W.2d at 140; *see Montes v. State*, 870 S.W.2d 643, 645 (Tex.App.—El Paso 1994, no pet.).

 Because we apply an abuse of discretion standard to this issue, it is essential that the record present the question which the trial judge did not allow to be asked or answered. *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex.Crim.App.1991), *cert. denied*,

---

**2.** The State was represented at trial and now on appeal by two attorneys pro tem appointed pursuant to TEX.CODE CRIM.PROC.ANN. art. 2.07 (Vernon 1977 and Vernon Supp.1995).

**3.** According to a statement made by the prosecutor, Jones had been implicated in the stabbing death of an elderly woman named Alberta

McNeal many months before the instant offense occurred. The record reflects that Jones was arrested for murder on June 25, 1982, but it is unclear whether this arrest was made in connection with the McNeal case. The record does not reflect a disposition of that charge.

503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992); *Godine,* 874 S.W.2d at 200. If counsel does not ask the question of the venire, or if he does not cause the record to reflect what question he would have asked if permitted, he fails to preserve error. *Caldwell,* 818 S.W.2d at 794; *Godine,* 874 S.W.2d at 200; *see Nunfio,* 808 S.W.2d at 484 and 484 n. 1 (specific motion in limine ruling as to a specific voir dire question sufficiently preserved issue for review). A defendant may also preserve error if he adequately identifies for the trial court a specific topic and it is apparent that the questions he would ask about that topic are proper voir dire questions. *Compare McCarter v. State,* 837 S.W.2d 117, 118–20 (Tex.Crim.App.1992) (voir dire error preserved where counsel stated that he wished to ask a question of those venirepersons who had problems with drugs in their immediate family; he wished to ask two questions of the venirepersons about prior criminal jury experience; he wished to determine whether anyone on the venire personally knew the police officers involved in the case; and he had a question for those members of the panel who had ever been accused of a crime by police officers) *with Caldwell,* 818 S.W.2d at 793–94 (defendant did not preserve error by merely requesting additional time to question a juror about "issue number three" without narrowing the scope of his proposed inquiry; a wide range of specific questions, both proper and improper, could have been asked in this general subject area).

■ The record before us does not reflect any specific questions which Appellant desired to ask the venire. However, he argues that the trial court's ruling had the effect of prohibiting him from questioning the venire about the defense's theory that, "had the police investigated the case in a thorough and conscious [sic] manner, they would have discovered the real killer" (presumably Leon Jones), and Appellant was "merely a convenient dupe" for the police. He also argues that the restriction on voir dire precluded him from obtaining information about the jurors' beliefs regarding whether the State ever wrongfully indicts someone; what constitutes an adequate police investigation; whether police might purposefully alter or destroy documents to support their investigative theory; and "about many other aspects of his defense." We disagree with Appellant's interpretation of what effect the trial court's ruling had on his ability to question the venire about the above topics. An inability to discuss the specific facts concerning Leon Jones did not restrict his ability to question the jury panel about the general topics which he outlines above. Appellant never told the trial court that he wished to ask questions on these topics, and he did not attempt to question the venire about these issues. As a result, Appellant failed to preserve error. Point of Error No. Two is overruled.

### Exclusion of Evidence Concerning Leon Jones

■ In his first point of error, Appellant argues broadly that the trial court erred by excluding all evidence concerning Leon Jones. Before addressing the merits of this contention, we must determined whether error is preserved. On the day before opening statements were scheduled to begin, the trial court ruled that the State's motion in limine previously granted as to voir dire applied to opening statements and cross-examination, and he instructed counsel to approach the bench before eliciting any of this type of evidence so that a hearing on its admissibility could be held. The granting or denying of a motion in limine, without more, preserves nothing for appellate review. *Nunfio,* 808 S.W.2d at 484 n. 1; *Saenz v. State,* 840 S.W.2d 96, 101 (Tex.App.—El Paso 1992, pet. ref'd). When a motion in limine is granted, an offer of the evidence which was the subject of the motion must be made at trial to preserve a claim of improper exclusion. *Fuller v. State,* 827 S.W.2d 919, 929 and 929 n. 10 (Tex.Crim.App.1992). Thus, in order to preserve error, Appellant had to offer the evidence covered by the motion in limine at trial.

■ However, Appellant raised the issue of the "Leon Jones evidence" immediately before opening statements were scheduled to begin. He asked the court whether he would be precluded from presenting his theory of

defense "that Leon Jones and not he committed this crime." In connection with this request, Appellant offered for the trial court's examination thirteen exhibits for the purpose of supporting his claim that Leon Jones was "involved" in this case.[4] Appellant then made a rather unorthodox request by asking the trial court to "rule that we have a perfect right to present whatever facts relevant to the case [including Leon Jones as the perpetrator] in the opening statement, in the cross examination, in our direct and in the entire case." He did not explain by what evidence these "facts" would be proven. Stating that nothing in the exhibits were inconsistent with Appellant's guilt, the trial court denied that request. However, he indicated that he might reconsider his ruling during the course of the trial.

For several reasons, we find that the denial of Appellant's request did not preserve error with regard to the exclusion of all "Leon Jones evidence." Appellant did not offer the thirteen exhibits for the purpose of obtaining a ruling as to their admissibility, but rather to illustrate for the trial court the basis of his defensive theory. Thus, the trial court's ruling did not have the effect of excluding these exhibits. Further, Appellant's request for a blanket approval by the court that he could present any evidence concerning Leon Jones does not amount to a request for a preliminary ruling on the admissibility of evidence. Due to the global nature of the request and Appellant's failure to offer the specific items of evidence he wished admitted

at trial, the trial court was simply not in a position to rule on the admissibility of all evidence concerning Leon Jones.[5] Even though the court seemed to indicate that it did not think the evidence concerning Leon Jones was admissible, we consider the ruling to be more akin to a ruling on a motion in limine than a preliminary ruling on the admissibility of evidence. *See Fuller,* 827 S.W.2d at 928–29 (the defendant offered expert testimony concerning reliability of DNA testing during a pretrial hearing on the defendant's motion to suppress the State's DNA evidence; at conclusion of hearing, the court denied the motion and also ruled that the defendant's evidence would not be admitted before the jury; court's ruling more akin to a ruling on a motion in limine; therefore, defendant was required to offer evidence at trial in order to preserve error). Consequently, we conclude that Appellant did not preserve error in the exclusion of all Leon Jones evidence by this ruling. Error is preserved only with regard to that evidence which Appellant actually offered at trial.

■ Appellant points to three occasions on which he claims the trial court excluded evidence concerning Leon Jones' involvement in this offense. The first occasion occurred during Appellant's cross-examination of John Prewit, who was chief of police in Pecos at time of the offense. Appellant asserts that the trial court's ruling "forced" him to offer Prewit's offense report into evidence because he was unable to present his defense any other way.[6] Appellant did not attempt to

---

4. All of the exhibits are hearsay, and Appellant made no effort to establish that any of the exhibits were not hearsay under Rule 801(e), or that they were admissible pursuant to an exception to the hearsay rule. Tex.R.Crim.Evid. 801(d), 801(e), 802, and 803. Our review of these exhibits reveals that after Appellant implicated Jones by stating that he had seen a large, black man covered with blood on the night of the murder, the police investigated Jones as a suspect. Further, the exhibits show that the attorneys pro tem attempted to gather for use at trial evidence rebutting the defensive claim that Jones had been involved in the murder. None of these exhibits support Appellant's claim that Jones had been involved in the commission of this offense.

5. A trial judge is usually not in a position to rule on the admissibility of evidence before trial begins. *Gonzales v. State,* 685 S.W.2d 47, 51 (Tex.

Crim.App.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985); *Rawlings v. State,* 874 S.W.2d 740, 743 (Tex.App.—Fort Worth 1994, no pet.). This is especially true with questions of relevance as are involved here. *See* Tex.R.Crim.Evid. 401.

6. Appellant apparently offered Prewit's entire offense report in order to get the following paragraph into evidence: "Several days after the murder, James Kimball came to my office and told me that Albert Contreras had told him that Albert and some of his friends had been drinking beer and smoking pot at the onion shed on North Willow Street the night of the murder. Albert told James that he and his friends had encountered a large Negro male on the railroad tracks at that location and that the Negro male had blood all over him. Albert refused to name the people that were with him. He also could not

first elicit the evidence he sought from Prewit before offering the offense report into evidence. Further, he did not ask Prewit anything about Leon Jones or the suspected identity of the large, black man in Appellant's story, nor did he make a bill of what further questions he would have asked of Prewit if permitted. Thus, there is nothing in the record to support Appellant's claim that the trial court excluded any evidence or forced Appellant to present this report. This contention is without merit.

■ Next, Appellant complains that the trial court would not permit him to ask Jesse Dominguez any questions about the possible involvement of Leon Jones in the Broadus case. Defense counsel did not make a bill of exceptions with regard to what questions he would have asked Dominguez if permitted. Instead, he offered two reports by Dominguez concerning his interview of Leon Jones about the possible involvement of Leon Jones in the Broadus case.[7] Merely offering the reports into evidence does not demonstrate what questions he wanted to ask. Because Appellant failed to make a bill of exceptions, error is not preserved with regard to any questions he would have asked Dominguez about the reports.

■ Appellant also asserts error in the trial court's refusal to permit him to elicit from Dominguez the identity of the other suspects whose fingerprints were submitted to the FBI for comparison with the latent prints. Error is preserved. Both Appellant and the State discuss the application of the common-law rule concerning the admissibility of third-party guilt evidence as set forth in *Ramirez v. State*, 543 S.W.2d 631 (Tex.Crim. App.1976) and *Erwin v. State*, 729 S.W.2d 709 (Tex.Crim.App.1987). However, the Rules of Criminal Evidence govern the admission of evidence and supersede the common-law rule as set forth in those pre-rule cases. *Burks v. State*, 876 S.W.2d 877, 904 (Tex.Crim.App.1994) (Rule 803(24) governs statements against penal interest and supersedes the common-law rule found in *Ramirez* and *Erwin* ); *see Stapleton v. State*, 868 S.W.2d 781, 785 (Tex.Crim.App.1993) (it is clear that the rules of criminal evidence now govern criminal proceedings in our courts except where otherwise provided); *Russeau v. State*, 785 S.W.2d 387, 389 (Tex.Crim.App. 1990) (the common law voucher rule superseded by rules of criminal evidence). Because Rule 803(24) is inapplicable to the particular evidence at issue here, we must look to the general rules governing the admission of evidence.

■ Finding a piece of evidence to be relevant is the first step in a trial court's determination of whether the evidence should be admitted before the jury. *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim.App.1990). Appellant argues generally that evidence concerning third-party guilt is always relevant, and thus, all evidence concerning Leon Jones, is likewise relevant. *See* TEX.R.CRIM.EVID. 401.[8] However, he does not address the relevance of this particular evidence, namely, that Dominguez initially identified Leon Jones as one of several potential suspects in the Broadus murder. The admissibility of evidence is within the trial court's discretion. *Duckett v. State*, 797 S.W.2d 906, 913 (Tex.Crim.App.1990). Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be re-

---

identify the Negro male." The report also reflects that Appellant was subsequently implicated in armed robberies in New Mexico and Kermit, Texas, and a capital murder in Andrews, Texas. Prewit stated that he interviewed Appellant and even though he would not admit to killing Mrs. Broadus, he knew a lot about the crime scene.

7. Defendant's Exhibit 19 is a report dated 1/8/87 which relates that Dominguez interviewed Leon Jones, Jr. in the Dallas County Jail. Dominguez advised Jones that he was investigating a murder in Pecos which had occurred on 9/29/82. Jones told Dominguez that he had left Pecos on 9/17/82 and had not returned until 12/1/82. Jones gave

Dominguez a statement to that effect. Defendant's Exhibit 18 is a report dated 1/8/87 which appears to be the second page of Defendant's Exhibit 19. It states that after Jones gave the written statement to Dominguez, he stated that he would testify in court that he had not been in Pecos at the time of the murder and that he did not know Albert Contreras.

8. Because of the posture of this case, we need not reach the broad question of whether third-party guilt evidence will always be relevant under Rule 401.

versed absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim. App.1993), *cert. denied*, ─── U.S. ───, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); *Montgomery*, 810 S.W.2d at 391 (opinion on rehearing). As long as the trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Montgomery*, 810 S.W.2d at 391.

 Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R.CRIM.EVID. 401; *Moreno*, 858 S.W.2d at 463. Relevancy is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a matter properly provable in the case. *Montgomery*, 810 S.W.2d at 375. Moreover, the evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Id.* at 376.

Contrary to the conclusion reached by the dissent, evidence showing that Dominguez, in conducting this investigation, submitted the known prints of several people for comparison to the latent prints is not, by itself, relevant. An investigation of a person by police, without more, does not equate to or even tend to show that person's guilt. Thus, this evidence does not tend to prove, or even provide a small nudge towards proving, that Leon Jones committed the offense or that Appellant did not. Likewise, it does not tend to support the defensive theories that the police conducted their investigation poorly or that Appellant was nothing more than a "convenient dupe" for the police. Thus, the trial court did not abuse its discretion in excluding the evidence showing that Dominguez had investigated several persons in connection with the commission of this offense.

 Finally, Appellant points to the exclusion of certain testimony by the FBI fingerprint analyst, Richard Leas. Appellant preserved error by making a bill of exceptions showing the excluded testimony. TEX.

R.APP.P. 52(b). Leas testified that he compared the eighteen latent prints lifted from the crime scene with the known prints of Leon Jones, Lloyd Chester White, Gino Lopez Rodriquez, James Henry Jones, Juan Lujan, Greg Barrera, and Louise Broadus. Of the eighteen latent prints submitted, Leas determined that eleven of them were latent prints of value. Leas testified that none of the eleven latent prints of value matched the known prints of Leon Jones. Leas could not make a conclusive determination with regard to the remainder of the latent prints, which he designated as "latent prints of no value," because they lacked sufficient ridge characteristics to be identifiable. Thus, with regard to these "latent prints of no value," he could not eliminate anyone, including Leon Jones or Appellant, as having made them.

The trial court did not abuse its discretion in determining that this evidence is irrelevant. Leas positively excluded Leon Jones as the source of the eleven latent prints of value. Leas' inability to conclusively eliminate Leon Jones as the source of the "latent prints of no value" does not tend to prove or disprove Appellant's guilt or innocence, or even provide a small nudge in that direction. Therefore, the trial court did not abuse its discretion in excluding this evidence.

 Without discussing how the excluded evidence demonstrates the guilt of any third party, including Leon Jones, the dissent concludes that the evidence is relevant to the defense of third-party guilt. After reaching this conclusion, however, the dissent fails to determine whether the alleged error requires reversal under TEX. R.APP.P. 81(b)(2).[9] We find that even if the trial court erred in excluding this evidence, reversal is not required because the error is harmless beyond a reasonable doubt. Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Crim.App.1989). We must determine whether, beyond a reasonable doubt, the error made no contribution to the conviction or the punishment. *Burks*, 876 S.W.2d at 904–

---

9. The dissent also fails to analyze the admissibility of the evidence under TEX.R.CRIM.EVID. 403.

05; *Perez v. State,* 824 S.W.2d 565, 568 (Tex. Crim.App.1992). An error is harmless if it did not interfere with the integrity of the trial process sufficiently to affect the outcome of the trial. *Burks,* 876 S.W.2d at 905; *Harris,* 790 S.W.2d at 587; *Perez,* 824 S.W.2d at 568. There is ample evidence supporting the jury's finding of guilt in this cause. The fingerprint evidence affirmatively established that Appellant placed his hand on the counter while standing on the cashier's side of the counter and while adjacent to the cash register. Appellant made several incriminating statements in which he admitted killing Louise Broadus. Corroborating these admissions, Appellant was seen in possession of a large wad of money on the morning following the murder. Given this evidence and the fact that there is absolutely no evidence that Leon Jones or anyone other than Appellant committed this offense, we can conclude beyond a reasonable doubt that the exclusion of this evidence made no contribution to the conviction or the punishment. Point of Error No. One is overruled.

### *FAILURE TO GIVE INSTRUCTION ON LESSER–INCLUDED OFFENSE OF MURDER*

In Point of Error No. Three, Appellant contends that the trial court erred in failing to instruct the jury on the lesser-included offense of murder. In determining whether Appellant is entitled to a charge on a lesser-included offense, we must consider all of the evidence introduced at trial, whether produced by the State or the defendant. *Banda v. State,* 890 S.W.2d 42, 69 (Tex.Crim.App.1994); *Dowden v. State,* 758 S.W.2d 264, 269 (Tex.Crim.App.1988). We apply the two-pronged *"Royster* test" [10] as recently modified in *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993), *cert. denied,* 114 S.Ct. 313 (1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Rousseau,* 855 S.W.2d at 673. Second, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of

the lesser-included offense. *Robertson v. State,* 871 S.W.2d 701, 706 (Tex.Crim.App. 1993); *Rousseau,* 855 S.W.2d at 673; *Lee v. State,* 893 S.W.2d 80, 85–86 (Tex.App.—El Paso 1994, no pet.). The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given. *Banda,* 890 S.W.2d at 60; *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim.App. 1987). If evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Dowden,* 758 S.W.2d at 269.

The first prong of the test is met because intentional murder is a lesser included offense of capital murder. *Robertson,* 871 S.W.2d at 705–06. Under the second prong, we must determine whether there is some evidence in the record, which if true, would permit a jury rationally to find that the defendant is guilty only of that lesser included offense. *Robertson,* 871 S.W.2d at 705–06. If there is some evidence which negates the aggravating element of the greater offense or if the evidence of such aggravating element is so weak that a rational jury might interpret it in such a way as to give it no probative value, then the defendant is entitled to a charge on the lesser included offense. *Id.* It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the fact finder to consider before an instruction on a lesser included offense is warranted. *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App.1994) (lesser included offense should have been given because of direct testimony regarding absence of any gun during theft).

In the factual setting of the instant case, we must determine whether there is some evidence which negates the commission of a robbery or attempted robbery, or whether the evidence showing this aggravating ele-

---

**10.** *Royster v. State,* 622 S.W.2d 442, 446 (Tex. Crim.App. [Panel Op.] 1981) (opinion on rehear- ing).

ment is so weak that a rational jury might have given it no probative value. Appellant claims that the following evidence shows that no robbery occurred: (1) it is unclear whether the open cash register contained currency; (2) Appellant's fingerprints were not found on the cash register; and (3) Appellant's incriminating statements admit to murder, but not robbery. According to Appellant, the jury could have believed that no money was taken from the register or that someone other than Appellant committed the robbery. Both arguments are without merit.

The evidence at trial showed that the silent alarm, triggered by the removal of a particular $20 bill, was activated just minutes before the discovery of Ms. Broadus' body on the floor of the liquor store. A trail of blood droplets led from Ms. Broadus' body to the cash register, which was found open. All but one of the witnesses who observed the register said that it did not have any currency in it. One of the police officers believed that a few $1 bills had been left in the register. Mrs. Box determined that the cash register, based upon the opening cash balance and the register receipts, should have contained $789. Appellant's fingerprints and palmprints were found adjacent to the register on the cashier's side of the counter. Laura Gonzales saw Appellant the following morning with a large wad of money, and he told her that he had gotten the money the night before by doing a "transa," which Ms. Gonzales said meant something illegal, like stealing. While it is true that Appellant did not admit the robbery to his cellmates, he made incriminating statements to other persons which concern the robbery. Appellant told a former peace officer that he killed Mrs. Broadus because she recognized him. When Ms. Gonzales later asked Appellant why he did not just knock Ms. Broadus down and take the money, Appellant responded that he could not leave any evidence or witnesses.

The evidence Appellant points to does not serve to negate or refute the evidence showing that Appellant murdered Louise Broadus while in the course of committing or attempting to commit robbery. Appellant's failure to mention the robbery every time he made an incriminating statement does not negate or refute the evidence showing that a robbery or attempted robbery occurred. Likewise, his claim that there is conflicting evidence with regard to whether any currency was left in the register does not negate the commission of a robbery or attempted robbery. Even if we accept as true the officer's statement that he thought a few ones had been left in the register, this does not show that no money was taken from the register. It only shows that not all of the currency was taken. Further, the evidence showing that money had been taken from the register at the time of the murder is not so weak or conflicting that the jury could have given it no probative value. While the exact amount taken is unclear, all of the witnesses testified to the effect that some currency, if not all of it, had been taken from the register. *See Lee,* 893 S.W.2d at 86. Appellant's claim that the jury could have believed that someone else took the money since his fingerprints were not found on the register is, at best, speculative. As stated in *Bignall,* it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the fact finder to consider before an instruction on a lesser included offense is warranted. *Bignall,* 887 S.W.2d at 24. There is absolutely no evidence to indicate that someone other than Appellant stole the money. In order for a jury to rationally find Appellant guilty of intentional murder but not capital murder, they would have to disregard all of the above evidence showing that a robbery or attempted robbery occurred. A rational jury would not disregard the crucial evidence showing that the murder occurred during the commission of robbery or attempted robbery. *See Robertson,* 871 S.W.2d at 707. Point of Error No. Three is overruled.

### INSTRUCTION ON REASONABLE DOUBT

█ In Point of Error No. Four, Appellant asserts that the trial court erred by including in the court's charge the definition of "reasonable doubt" mandated by the Court of Criminal Appeals in *Geesa v. State,* 820 S.W.2d 154, 165 (Tex.Crim.App.1991). This instruction is required in all criminal cases,

even in the absence of an objection or request by the State or the defendant. *Geesa,* 820 S.W.2d at 162. He argues that the instruction is fundamentally defective because it tends to confuse and mislead the jurors, it encourages jurors to reach a hasty resolution without consideration of all of the evidence, and it does not adequately discuss the presumption of innocence. Appellant admits that he raised no objection to this instruction at trial.

■■■ It is the function of the charge to lead and to prevent confusion. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). It must also contain an accurate statement of the law. *Id.* at 731. By adopting this definition of reasonable doubt for inclusion in all criminal cases, the Court of Criminal Appeals necessarily determined that it is an accurate statement of law which performs the function of leading the jury to the threshold of its duty to decide the facts of a case. *See Abdnor,* 871 S.W.2d at 731. As an intermediate appellate court, we are duty bound to follow the law declared by the Texas Court of Criminal Appeals on matters pertaining to the enforcement of criminal laws. *Flores v. State,* 883 S.W.2d 383, 385 (Tex.App.—Amarillo 1994, pet. ref'd); *Southwick v. State,* 701 S.W.2d 927, 929 (Tex. App.—Houston [1st Dist.] 1985, no pet.). Once the law is declared, we are not at liberty to impose a different declaration of the law. *Flores,* 883 S.W.2d at 385, *citing Abdnor v. Ovard,* 653 S.W.2d 793, 794 (Tex. Crim.App.1983). Point of Error No. Four is overruled.

Having overruled all of Appellant's points of error, the judgment of the trial court is affirmed.

CHEW, Justice, dissenting.

While I agree with almost all of the majority opinion and would prefer to embrace the majority's outcome, I must respectfully dissent on Point of Error No. One. I believe that the trial court impinged upon the jury's role as the ultimate fact finder by precluding them from making up their own mind on Appellant's defense of third-party guilt. The threshold for what constitutes relevant evidence is comparatively low. Evidence is "relevant" that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. "All relevant evidence is admissible, except as otherwise provided by ... these rules.... Evidence which is not relevant is inadmissible." TEX.R.CRIM.EVID. 402.

However weak it might be, I find evidence that there had been other suspects and that there were unmatchable fingerprints at the scene of the crime to be relevant. Moreover, the cases cited by the majority, in my mind, call for a conclusion contrary to the one made. In each of those cases, the objectionable evidence **was admitted** by the trial court over the defendant's objections. Finally, in each case, the evidence, although found relevant, was held inadmissible on other grounds; either under Rule 403 (excluding evidence whose probative value is outweighed by its prejudicial effect); Rule 404(b) (excluding evidence of other wrong acts); or Rule 702 (relating to the admissibility of expert testimony).[1]

---

**1.** In *Montgomery,* 810 S.W.2d at 393, appellant was tried simultaneously under two indictments for indecency with a child committed against two of his three daughters. One of appellant's former wives, not the mother of his daughters, testified, over appellant's objections on the grounds of relevancy and extraneous offense evidence, that in her experience, appellant would "quite frequently" "walk around in the nude" in front of his children "[w]ith erections." The Court of Appeals reversed, holding such evidence inadmissible, even though relevant in accordance with Rule 402, on the basis that such evidence constituted extraneous offense evidence and was therefore inadmissible under Rule 404. *Id.* at 393. ("Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can

be said the trial court abused its discretion to admit that evidence.") *Id.* at 391.

In *Moreno,* 858 S.W.2d at 457, appellant was convicted for the murder in the course of committing or attempting to commit kidnaping John Cruz. Appellant's confession and the testimony of Cisneros was admitted over the appellant's objection showing that two months prior, appellant had planned to kidnap, hold for ransom, and then kill Robert Cisneros, whom appellant believed to be the nephew of the mayor of San Antonio. On appeal, the evidence was expressly found to be relevant but nevertheless was held inadmissible under Rule 403 on the ground that it was unduly prejudicial. *Moreno,* 858 S.W.2d at 464.

In *Duckett,* 797 S.W.2d at 907, appellant was indicted on charges of indecency with a child. At issue was the expert testimony of a certified social worker who testified as to the six elements or phases of "Child Sexual Abuse Syndrome," and then applied those six elements to the facts of the case, indirectly bolstering the testimony of the child-victim. The appellate court reversed the trial court, finding the expert's testimony inadmissible under Rule 702. The Court of Criminal Appeals reversed the court of appeals and found the testimony admissible. Again the issue turned not on relevancy but on the proper use of such expert testimony. *Id.* at 917–20.