Rickey Bernard RUSSEAU, Appellant,

v.

The STATE of Texas, Appellee.

No. 658–88.

Court of Criminal Appeals of Texas, En Banc.

March 7, 1990.

William C. Wright, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Christian E. Bryan, Asst. Dist. Atty., Tyler, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

BERCHELMANN, Judge.

Appellant, Rickey Bernard Russeau, was indicted, tried and convicted by jury of the offense of murder. The jury thereafter assessed punishment at life confinement in the Texas Department of Corrections.

On direct appeal the Twelfth Court of Appeals, in an unpublished opinion, reversed appellant's conviction and ordered an acquittal holding, sua sponte, that there is no evidence to support appellant's conviction. *Russeau v. State*, No. 12–87–00066–CR (Tex.App.—Tyler, delivered May 17, 1988). The Court of Appeals reached this conclusion based upon the "voucher rule" pursuant to *Palafox v. State*, 608 S.W.2d 177, 181 (Tex.Cr.App.1979). *Russeau*, slip op. at 8.

We granted the State's petition for discretionary review to determine whether the Court of Appeals erred by: 1) failing to view all the evidence in a light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and 2) holding that the prosecution was required to disprove appellant's oral statements beyond a reasonable doubt. We will reverse the Court of Appeals' ruling and remand the cause to that Court.

The facts of the case are not disputed. We liberally draw from the Court of Appeals' rendition of the facts. William Tremmel was brutally stabbed and beaten to death on or about April 3, 1986. His bloody body, repeatedly stabbed about the face and chest, was discovered the next day, lying on the bathroom floor in his home. The victim's housemate was out of town when the murder occurred. Many items of property were missing at the time of the discovery of the murder.

Numerous friends of Tremmel testified that they were frequent guest in Tremmel's home and that they did not know appellant to be acquainted with Tremmel and had never seen appellant in Tremmel's home. The cumulative testimony of these witnesses establishes that Tremmel was alive and well as of 11:00 p.m. on April 3, 1986. One of the witnesses, Stevie Hackett had dinner with Tremmel at 8:30 p.m. on April 3, 1986, and several other witnesses testified that they had visited Tremmel at

his residence on the evening of the murder. Apparently the last person, other than the murderer, to speak to Tremmel was a friend who testified that he had a telephone conversation with Tremmel at about 10:30 p.m. on the night of the murder.

A few days after the murder, appellant telephoned Michael Goodman, saying that he had two clocks for sale. Goodman testified that he contacted the Smith County Sheriff's Office because he suspected the clocks might be stolen, and was told by a member of the Department to purchase the clocks. Goodman accompanied appellant to a residence located in north Tyler. Appellant left for a few minutes and returned with two clocks loaded in the trunk of his automobile. Goodman purchased the clocks and later surrendered them to the Tyler Police Department.

Joe Andrew Jones testified that about three or four weeks before April 24, 1986, Dwight Riggs and appellant brought two clocks to his residence located in north Tyler and put them in a closet in the home. Jones also testified he discovered two television sets in a storage shed on his property at about the same time. He identified the clocks, produced by the State as exhibits, as the same two clocks he had seen earlier in appellant's possession. Additionally, appellant was arrested wearing a wrist watch later identified as belonging to the victim.

Sammie Lee Robinson, who at the time of his trial was an inmate of the Smith County Jail, stated that he was an acquaintance of appellant, having met him in 1977 or 1978 while both were incarcerated in jail. He testified that he had seen appellant two or three times in April 1986; the first meeting was on or about the first of April and the last time was around the third of April. Robinson testified that appellant engaged him in a conversation about the homosexuals living on Lindsey Lane (referring to the victim's residence). Appellant mentioned the types of automobiles Tremmel and Tremmel's housemate drove, and Robinson recognized those cars as belonging to Tremmel. Appellant expressed his intention to rob the men but, according to Robin-

son, never indicated that he was going to kill anyone. Appellant offered to hire Robinson to drive him to Tremmel's residence for the robbery, but Robinson declined appellant's offer.

Appellant testified in his own defense. He admitted that he met Tremmel and visited him on the night of the murder. Appellant contended that Tremmel gave him the gold wrist watch he was wearing when he was arrested. Appellant denied participation in the robbery of Tremmel or of his murder.

On cross-examination, appellant admitted speaking to the authorities, but denied ever admitting involvement in the robbery. Much of appellant's testimony, relating to the times of day that he was present in Tremmel's home, is in conflict with other testimony produced by the State.

In rebuttal, the State called Tyler Police Detective Talley, who testified that appellant voluntarily spoke with him on April 14, 1986 and denied any knowledge of Tremmel's murder, but admitted knowing the victim. When Talley questioned appellant on April 22, 1986, appellant admitted that he initiated the robbery, accompanied by Dwight Riggs and a black male unknown to appellant. Detective Talley further testified that appellant stated that he remained outside as a lookout while the other men entered the victim's house, and that appellant looked through the window and saw the men seize the victim and take the victim to the back part of the house.

Detective Talley stated that appellant told him on April 22, 1986 that appellant had observed Riggs and the other man involved in the robbery carrying items of property from the house, and that some of the items could be found in a trash barrel at a particular house on North Confederate. That house was occupied by State's witness Joe Andrew Jones. A search of the barrel behind Jones' house produced a ring, cuff link and medallion, all later identified as belonging to the murder victim.

The Court of Appeals reasoned that the State was bound by appellant's statement, introduced by the State, that appellant served only as a "lookout" for the crime.

Because the State failed to disprove that statement beyond a reasonable doubt and because the jury was not charged with the law of parties, the Court of Appeals held there was no evidence supporting the jury's verdict that appellant murdered the victim. We will address the two points of error together, because the sufficiency issue and the issue of applicability of the voucher rule are intertwined.

■ The State submits that Tex.R.Crim. Evid. Rule 607, in effect at the time of trial, nullifies the common law voucher rule that the State is bound by exculpatory testimony elicited from its witnesses on direct examination. Rule 607 states, "The credibility of a witness may be attacked by any party, including the party calling him."

In *Ibanez v. State*, 749 S.W.2d 804, 807, n. 3 (Tex.Cr.App.1986), we indicated in dicta that Rule 607 abrogated the common law voucher rule. We implied the same, again in dicta, in *Derrick v. State*, 773 S.W.2d 271, 275, n. 2 (Tex.Cr.App.1989). Several intermediate appellate courts have specifically held that Rule 607 effectively overrules the voucher rule. *Guerra v. State*, 760 S.W.2d 681, 696 (Tex.App.—Corpus Christi 1988, review ref'd); *Gale v. State*, 747 S.W.2d 564, 566 (Tex.App.—Fort Worth, no pet.); *Stills v. State*, 728 S.W.2d 422, 425–28 (Tex.App.—Eastland, no pet.); *Brown v. State*, 725 S.W.2d 801, 808 (Tex. App.—Austin 1987), remanded on other grounds, 761 S.W.2d 4 (Tex.Cr.App.1988).

Today, we are directly confronted with the question of the viability of the common law voucher rule in light of the enactment of Rule 607. As suggested in *Ibanez*, 749 S.W.2d 804, and as held by several Courts of Appeals, we hold that the voucher rule was rejected with the enactment of Rule 607.

The common law voucher rule is premised upon the notion that a party may not impeach his own witness; a party who calls a witness to the stand "vouches for his credibility." *Chambers v. Mississippi*, 410 U.S. 284, 296, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973); *Lipinski v. New York*, 557 F.2d 289, 292–94 (2d Cir.1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *Palafox*, 608 S.W.2d at 183–84 (Dally, J., dissenting); C. McCormick & E. Cleary, *McCormick on Evidence* § 38 (3d ed. 1984). Thus, the rationale behind the voucher rule is effectively destroyed by Rule 607 which provides for impeaching one's own witness. See *Ibanez*, 749 S.W.2d at 812 (Onion, P.J., dissenting, joined by Tom G. Davis and White, JJ.).

Moreover, Rule 607 is patterned after, indeed, is identical to, Fed.R.Evid. Rule 607 which was enacted in 1975. The advisory committee's note to Fed.R.Evid. Rule 607 explains why the federal rule rejects the common law voucher rule:

> The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witness as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary.

■ We agree with that rationale, and hold that for cases tried after the effective date of Tex.R.Crim.Evid. Rule 607, the State will not be bound by exculpatory statements which previously fell under the voucher rule pursuant to *Palafox*, 608 S.W.2d 177. Therefore, in the case at bar, the State was not required to disprove appellant's statement that he only served as a lookout for the robbery and murder of the victim. Tex.R.Crim.Evid. Rule 607.

The incorrect application of the voucher rule clearly affected the Court of Appeals' sufficiency analysis. The Court held that the evidence inculpating appellant; i.e., his presence at the scene of the crime, his knowledge of the part of the house in which the victim's body was found, appellant's stated intention to rob the victim, his possession of the victim's property after the murder and his conflicting statements to authorities, failed "to disprove beyond a reasonable doubt [appellant's] oral statements induced by, and therefore binding upon the State, that [appellant] remained outside as a lookout." *Russeau*, slip op. at 8.

By erroneously applying the voucher rule to this case, the Court of Appeals erred by failing to view the evidence in the light most favorable to the verdict. *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989). The jury was free to reject any or all of the evidence presented at trial. *Garrett v. State*, 682 S.W.2d 301, 305 (Tex.Cr.App. 1984). This includes the jury's ability to reject the testimony that appellant remained outside as a lookout.

The State's grounds for review are sustained. The Court of Appeals' judgment is reversed and the cause is remanded back to that Court for further proceedings not inconsistent with this opinion.

TEAGUE, J., concurs in the result.