Troy Edward **HARMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–89–00443–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 5, 1990.

———

Stanley C. Kirk, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., Lester Blizzard and Mike Anderson, Asst. Dist. Attys., for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

OPINION

EVANS, Chief Justice.

A jury found appellant guilty of aggravated robbery and, upon appellant's plea of

true to an enhancement paragraph, the court assessed punishment at 65 years confinement. We affirm.

In two points of error, appellant argues that the evidence is insufficient to sustain his conviction, and that he is entitled to an acquittal because the State did not disprove his exculpatory confession.

The criminal act in this case is the same as that involved in *McKelvey v. State*, (01–88–01175–CR), 1990 WL 4235 which this Court decided in favor of the State in an unpublished opinion issued January 18, 1990.

The complainant, Mary Gregory, and her three children lived with Donna and Paul Covington and their son. Appellant was a coworker of Paul Covington, and had visited the Covingtons' home on several occasions. The complainant, who had known appellant about two months, loaned appellant $20 with the understanding that it would be repaid as soon as appellant obtained the money from his girlfriend, later that day. When appellant did not repay the money, the complainant called him several times on the telephone, and appellant finally said he would come to the Covingtons' house to repay the money. When appellant did not appear, the complainant called him again. In that conversation, appellant said he had gone to the Covingtons' house, but found no one at home. When the complainant disputed this fact, appellant told her that "someone was fixin to get hurt," and he put another person on the telephone to describe the house and prove he had been there.

On the evening of the offense, the complainant and the Covingtons retired for the evening with the complainant sleeping on the couch in the living room. About 2:00 to 2:30 a.m., the complainant heard a knock on the door and, seeing appellant through the window, she opened the door to let him enter. Appellant walked to the kitchen, where he sat down at a table, and the complainant walked back to the couch. Neither the complainant nor appellant completely shut the door, and a few minutes later, two acquaintances of appellant, McKelvey and Spates, burst through the door armed with a shotgun and pistol. One of them ran back to the Covingtons' bedroom, and the other dragged the complainant by the hair to Covingtons' bedroom.

In the bedroom, McKelvey and Spates robbed the complainant and the Covingtons of their belongings, and sexually assaulted the two women. They also fired a shotgun near Paul Covington's face, as he lay on the floor, causing splinters to enter his face. When the noise awakened the Covingtons' son, he came into the bedroom crying for his mother. McKelvey pointed his gun at the child and said if he did not go back to his room, he would "blow his brains all over the fucking room." The complainant and Donna Covington both testified that appellant called to McKelvey from another room, and told him not to bother the children.

Appellant testified in his own defense. According to his testimony, he had loaned the complainant $50, and the $20 he received from her was simply a partial repayment of that loan. He said the complainant called him around midnight on the evening in question, and told him she had the money ready. He and his two friends, McKelvey and Spates, drove to the house to pick up the money. He said that he "froze" when McKelvey and Spates entered the house with guns. He testified that he told McKelvey and Spates that he was leaving, but that McKelvey swung the shotgun toward him and told him he was not going anywhere. He said that throughout the events in the bedroom, McKelvey stood in the bedroom doorway, watching him, and that he was in fear of his life. He said he set off a "beeper," thinking it would prompt McKelvey and Spates to run away. He then ran out, but Spates followed him carrying a blanket with the stolen goods in it. He said Spates pointed a pistol at him, and told him he was not going anywhere. He said McKelvey and Spates then told him to drive them to their garage apartment, which was located behind the house where his girlfriend lived. On the way there, both men warned him that if he told anyone about what had happened, they "would do something" to him. He denied any par-

ticipation in planning the robbery or the sexual assaults. He said he had no idea McKelvey and Spates had weapons when they went with him to the Covingtons' house.

The complainant and the Covingtons, who had been left tied up in the Covingtons' bedroom, finally freed themselves and called the police. They provided appellant's name and telephone number to the police, who called appellant and asked him to come to the station for questioning. At trial, appellant admitted that he initially told the police he knew nothing about the incident, and that he later confessed knowledge of it and signed a written statement.

Appellant first asserts that the evidence is insufficient to support his conviction, arguing there was no testimony rebutting his exculpatory statement that he went to the Covingtons' house only to collect the money owed by the complainant. He contends that his mere presence at the house does not make him a party to any offense committed.

In reviewing the sufficiency of the evidence to support a jury conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The same standard applies to cases involving circumstantial evidence as applies to those involving direct evidence. *Denby v. State,* 654 S.W.2d 457, 464 (Tex.Crim.App. [Panel Op.] 1983) (op. on reh'g). However, an additional principle of appellate review applies to cases based on circumstantial evidence. A conviction cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt. *Id.* This does not mean that every fact must point directly and independently

to the guilt of the accused. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987). However, the cumulative force of all the incriminating circumstances must be sufficient to warrant a conclusion of guilt. *Id.* Where there are conflicts and contradictions in the evidence, as there are in this case, reconciliation of such conflicts and contradictions is the province of the jury. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim.App.1982). Such conflicts and contradictions will not require reversal if there is enough credible testimony to support the conviction. *Id.*

We must review appellant's testimony, and any contradictory testimony, in light of the foregoing standards of review:

(1) Appellant testified he did not participate in the planning of the rape or robbery, but the complainant testified that, several hours before the offense occurred, appellant told her over the telephone that "someone was fixing to get hurt." Additionally, McKelvey and Spates rode with appellant in the same vehicle to the Covingtons' house and gained entry moments after the complainant let appellant in the door.

(2) Appellant denied he had any knowledge that McKelvey and Spates had guns, theorizing that one of them wore "baggy parachute" pants in which the guns were concealed. However, both the complainant and Donna Covington testified that McKelvey and Spates were wearing blue jeans.

(3) Appellant testified he took McKelvey and Spates along with him to the Covingtons' because he did not want to leave them at his girlfriend's house, where she and two other women were playing cards. He also testified that he was in fear of his life, and that McKelvey kept the shotgun trained on him during the offense. However, both the complainant and Donna Covington testified that appellant was not threatened by McKelvey and Spates, that appellant never said that he was leaving, and that, at one point, McKelvey and Spates asked appellant "if he was all right." Moreover, it can reasonably be inferred that both McKelvey and Spates were participating in the sexual assaults at the

same time, and that McKelvey did not have his shotgun constantly aimed at appellant.

In this case, the trial court charged the jury on the law of parties. Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the person to commit the offense. *Garza v. State*, 573 S.W.2d 536, 537 (Tex.Crim.App. [Panel Op.] 1978); Tex. Penal Code Ann. sec. 7.02(a)(2) (Vernon 1974).

We find that the testimony of the complainant and Donna Covington provides sufficient cumulative force of incriminating circumstances to warrant a reasonable jury to conclude that appellant was guilty as a party. Therefore, we overrule his first point of error.

Appellant argues, in his second point of error, that the "voucher" rule entitles him to an acquittal. The Texas Court of Criminal Appeals has described the voucher rule as follows:

> [W]here the state puts in evidence the statements of the accused party which exculpates [sic] the accused, and does not directly or indirectly disprove them, the accused is entitled to an acquittal.

*Palafox v. State*, 608 S.W.2d 177, 181 (Tex.Crim.App.1979) (quoting *Banks v. State*, 56 Tex.Crim. 262, 119 S.W. 847, 848 (1909)). The court has also stated that, before the rule is invoked: (1) it must first be established that the accused has admitted doing the acts which constitute the basis for the offense; (2) it must be determined whether the statements alleged to be exculpatory are such as would clear or tend to clear the accused from fault or guilt; and (3) it must appear that the State has not refuted the exculpatory statement. *Palafox*, 608 S.W.2d at 181–82. Additionally, it has been held that the rule does not apply where the accused testifies before the jury in accordance with such exculpatory statement and his defensive theory is fairly submitted to the jury. *Glover v. State*, 566 S.W.2d 636, 637 (Tex.Crim.App. [Panel Op.] 1978).

We first note that several courts of appeals, and the Texas Court of Criminal Appeals, in dicta, have stated that the voucher rule has been abrogated by Tex.R. Crim.Evid. 607, which became effective on September 1, 1986. *Ibanez v. State*, 749 S.W.2d 804, 807 n. 3 (Tex.Crim.App.1986); *Downing v. State*, 761 S.W.2d 881, 883 (Tex.App.—Fort Worth 1988, pet. ref'd); *Nation v. State*, 762 S.W.2d 290, 293 (Tex. App.—Beaumont 1988, no pet.); *Green v. State*, 761 S.W.2d 824, 827 n. 2 (Tex.App.— Dallas 1988, no pet.). Moreover, the Court of Criminal Appeals expressly held in an opinion issued the day after submission of this case, that rule 607 rejected the voucher rule. *Russeau v. State*, 785 S.W.2d 387 (Tex.Crim.App.1990). Because the offense here occurred after the effective date of amended Tex.R.Crim.Evid. 607, we conclude that the voucher rule is not available to appellant.

Accordingly, we overrule appellant's second point of error and affirm the judgment.