Opinion filed November 3, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed November 3, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-03-00391-CR 

 

                                                    __________

 

                       CHRISTOPHER CLARENCE RHYNES, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 42nd District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 21,046-A

 



 

                                                                   O
P I N I O N

 








The indictment charged appellant, Christopher
Clarence Rhynes, with murdering James Thomas Talent by intentionally and
knowingly causing his death and by intentionally and knowingly committing an
act clearly dangerous to human life with the intent to cause serious bodily
injury.  See TEX. PEN. CODE ANN. ' 19.02(b)(1) & (2) (Vernon
2003).  The charge of the court submitted
to the jury also contained the lesser included offenses of manslaughter and
criminally negligent homicide.   See
TEX. PEN. CODE ANN. ''
19.04 & 19.05 (Vernon 2003).  The
jury convicted appellant of manslaughter and assessed his punishment at
confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of 18 years and 6 months. 
Appellant raises two points of error attacking his conviction.  We affirm.

                                                                          Facts

Appellant admitted at trial to stabbing Talent
with a knife during the early morning hours of 
February 2, 2003.[1]  Appellant asserted that he stabbed Talent in
self-defense during an altercation that occurred at Talent=s house.  The altercation allegedly stemmed from an
incident which occurred on the previous night. 
Appellant was romantically involved with Talent=s
former girlfriend, Brenda Borrego. 
Borrego testified that Talent forced his way into her home on the
previous night and grabbed her by the throat. 
Appellant witnessed this alleged assault by Talent upon Borrego.  Borrego testified that both she and appellant
were worried about her safety as a result of Talent=s
actions on the previous night.

Appellant testified that he drove by Talent=s house several times on the following
day in order to monitor Talent=s
whereabouts.  Appellant and Borrego
subsequently met at a bar that night (February 1, 2003).  They stayed at the bar until it closed after
midnight on February 2, 2003.  Leaving in
separate vehicles, both appellant and Borrego drove to Talent=s house.  Appellant and Borrego testified that neither
of them knew that the other one planned to go to Talent=s
house on their way to Borrego=s
house.  Borrego testified that she drove
to Talent=s house
to make sure that he was not present at her house.  Appellant testified that he drove by Talent=s house for the same reason.  Borrego arrived at Talent=s house first.  She testified that she entered Talent=s house uninvited and ordered Talent to
leave her alone.  Upon exiting Talent=s house, Borrego observed
appellant.  After a brief conversation
with appellant outside of Talent=s
house, Borrego left Talent=s
house and was under the impression that appellant would be leaving at the same
time.  








Instead of leaving Talent=s
house, appellant decided to enter Talent=s
house to discuss the events of the previous night with Talent.  Appellant stated that Talent hit him in the
chest, knocking appellant to the floor. 
Appellant further testified that a physical struggle then occurred
between he and Talent.  Appellant
contends that he stabbed Talent in self-defense with a knife he found on Talent=s kitchen table.  Appellant subsequently threw the knife away
in a dumpster.  Appellant hid the clothes
that he wore at the time of the stabbing underneath Borrego=s trailer house. 

Dr. Marc Andrew Krouse, the forensic pathologist
who perform an autopsy on Talent, testified that Talent died as a result of a
single stab wound to the chest.  The stab
wound was 5.5 inches deep.  The knife
penetrated the right ventricle of the heart, the aorta, and the main bronchus
of the right lung.  The penetration of
the knife stopped when it struck Talent=s
spinal column.  Dr. Krouse testified that
Talent suffered massive internal bleeding almost immediately after being
stabbed.  Dr. Krouse further testified
that extreme blood loss would have occurred externally within four
seconds.  

Appellant initially denied knowledge of the
circumstances surrounding Talent=s
death when contacted by the police. 
However, he subsequently admitted to his involvement by executing a
written statement.  

                                                                 Issues
on Appeal

In his first point of error, appellant contends
that the trial court erred in overruling his request to delay the
cross-examination of Borrego until his case-in-chief.  Appellant attacks the legal and factual
sufficiency of the evidence in his second point of error.

                                               Request
to Reserve Cross-Examination

The State called Borrego as a witness during its
case-in-chief.  At the conclusion of her
direct testimony, appellant=s
trial counsel made the following request: 
A[Appellant]
would like to reserve the cross examination until his case-in-chief of this
witness, Your Honor.@  At the time he made this request, appellant
did not offer a reason to justify a departure from the traditional practice of conducting
cross-examination immediately following the direct examination of the
witness.  When the trial court denied
this request, appellant=s
trial counsel informed the trial court that he would recall Borrego as a witness
during appellant=s
case-in-chief. 








Appellant cites Craig v. State, 594 S.W.2d
91, 95-96 (Tex.Cr.App.1980), for the proposition that a defendant does not lose
his right to recall a State=s
witness for cross-examination merely because he does not exercise the right of
cross-examination immediately after direct examination by the State.   Appellant has correctly cited Craig
for this proposition.  With respect to the
holding in Craig, we note that the evidentiary hurdle which the Court of
Criminal Appeals sought to overcome no longer exists.  The court based its holding on the common law
Avoucher@
rule which prohibited a party from impeaching his or her own witness.  Craig v. State, supra at 95-96;
see Russeau v. State, 785 S.W.2d 387, 390 (Tex.Cr.App.1990).  The court subsequently noted  in Russeau that the voucher rule has
been abrogated by TEX.R.EVID. 607.  Russeau
v. State, supra at 390.     

The gist of appellant=s complaint
on appeal is that the trial court=s ruling
prevented him from asking leading questions of Borrego during his direct
examination of her during his case-in-chief. 
The State lodged two Aleading@
objections which the trial court sustained during appellant=s
direct examination of Borrego. 
TEX.R.EVID. 611(c) specifies the situations wherein leading questions may
be asked during direct examination:  

Leading questions should not be used on the direct
examination of a witness except as may be necessary to develop the testimony
of the witness....When a party calls a hostile witness, an adverse party,
or a witness identified with an adverse party, interrogation may be by leading
questions.  (Emphasis added)

 

In the two instances when the trial court sustained the State=s objection to a leading question
propounded to Borrego by appellant, he did not seek to invoke any of the
exceptions provided by Rule 611(c) for asking a leading question during the
direct examination of a witness.  We
decline to find that the trial court erred in not permitting leading questions
during direct examination when the party seeking to ask them did not request to
be permitted to do so under Rule 611(c). 
Furthermore, appellant did not make an offer of proof with regard to any
testimony that he was unable to obtain from Borrego.  See TEX.R.EVID 103(a)(2) &
(b).  Accordingly, the record does not
show that the trial court committed reversible error with regard to not allowing  appellant to ask Borrego leading
questions.  See TEX.R.APP.P.
44.2.  Appellant=s
first point of error is overruled.

                                                        Sufficiency
of the Evidence








As noted previously, appellant attacks the legal
and factual sufficiency of the evidence supporting his conviction.  Specifically, he contends that the evidence
was legally and factually insufficient to disprove his claim of self-defense.  The State argues that appellant is estopped
from attacking the sufficiency of the evidence by not objecting to the
submission of the lesser included manslaughter charge on which the jury
ultimately convicted him.  We agree.  A defendant who requests or does not object
to the submission of a lesser included offense is estopped from complaining on
appeal that the evidence is legally or factually insufficient to support a
conviction of the lesser offense.  See
State v. Lee, 818 S.W.2d 778, 781 (Tex.Cr.App.1991), overruled on other
grounds by Moore v. State, 969 S.W.2d 4, 10 (Tex.Cr.App.1998);  see also State v. Yount, 853 S.W.2d 6,
9 (Tex.Cr.App.1993); Otting v. State, 8 S.W.3d 681, 687 (Tex.App. ‑
Austin 1999, pet=n ref=d, untimely filed).  This rule is based upon the rationale that
the defendant cannot subsequently attack the sufficiency of the evidence after
previously accepting the benefit of the lesser included charge.  Otting v. State, supra at 687.

Moreover, even if the rule of estoppel is not applicable,
we conclude that the evidence supporting appellant=s
conviction is both legally and factually sufficient.  In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex.Cr.App.2000).  To determine if the evidence is factually
sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak that the verdict is clearly
wrong and manifestly unjust or whether the evidence contrary to the verdict is
so strong that the beyond‑a‑reasonable‑doubt burden of proof
could not have been met. Zuniga v. State, 144 S.W.3d 477
(Tex.Cr.App.2004); Ross v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Zuliani
v. State, 97 S.W.3d 589, 595 (Tex.Cr.App.2003); Vasquez v. State, 67
S.W.3d 229, 236 (Tex.Cr.App.2002); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
The jury, as the trier of fact, was the sole judge of the credibility of
the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM.
PRO. ANN. arts. 38.04 & 36.13 (Vernon 1979 & 1981).  Deference is given to the jury verdict, as
well as to determinations involving the credibility and demeanor of witnesses. Cain
v. State, supra at 407.








After the defendant has introduced some evidence
of a defense, the State bears the burden of persuasion to disprove it. Zuliani
v. State, supra at 594; Saxton v. State, 804 S.W.2d 910, 913-14
(Tex.Cr.App.1991). This burden does not require the State to introduce evidence
disproving the defense, rather it requires the State to prove its case beyond a
reasonable doubt. Zuliani v. State, supra at 594; Saxton v.
State, supra at 913. To determine legal sufficiency of the evidence
to disprove a nonaffirmative defense, the appellate court asks whether, after
viewing all the evidence in the light most favorable to the prosecution, any
rational trier of fact would have found the essential elements of the offense
beyond a reasonable doubt and also would have found against appellant on the
defensive issue beyond a reasonable doubt. Saxton v. State, supra at
914.  When a defendant challenges the
factual sufficiency of the rejection of a defense, the reviewing court employs
the same standard of review articulated in Zuniga because, once the
defendant has met his or her burden of production of evidence as to a defense,
the State bears the burden to prove appellant=s
guilt of the charged offense beyond a reasonable doubt. See Zuniga v. State,
supra at 484; Zuliani v. State, supra at 595. A guilty finding is an
implicit rejection of the defense. Zuliani v. State, supra at
594.

Appellant contends that the State failed to offer
sufficient evidence to overcome his claim 
of acting in self-defense. 
Appellant=s
evidence to support his self-defense claim came primarily from his own
testimony.  He points to his testimony that
Talent attacked him first and that he attempted to flee from Talent=s home when the altercation began.   The jury, as the sole judge of the
credibility of appellant=s
testimony, was free to reject his account of the altercation.  In this regard, the police officers who
processed the murder scene did not find evidence of a struggle inside of Talent=s house.  Furthermore, appellant testified that Talent
traveled a relatively long distance from the location in the house where he
stabbed Talent to the place where Talent ultimately collapsed.  The police did not find blood along the path
which Talent purportedly traveled after being stabbed.  As noted previously, Dr. Krouse testified
that Talent experienced massive external blood loss almost immediately after
being stabbed.  Under Texas law, a person
commits the offense of manslaughter Aif
he recklessly causes the death of an individual.@
Section 19.04(a).  TEX. PEN. CODE ANN. ' 6.03(c) (Vernon 2003) provides:

A person acts recklessly, or is reckless, with
respect to circumstances surrounding his conduct or the result of his conduct
when he is aware of but consciously disregards a substantial and unjustifiable
risk that the circumstances exist or the result will occur.

 








Appellant testified that he Apoked@ the knife at Talent Ato scare him@
in an effort to flee the altercation. 
Common sense dictates that the act of poking a knife at someone will
support a finding of reckless conduct. 
When the evidence is viewed in the light most favorable to the jury=s verdict,  we conclude that a rational trier of fact
could have found the essential elements of manslaughter beyond a reasonable
doubt while rejecting appellant=s
claim of acting in self-defense. 
Furthermore,  when the evidence is
viewed in a neutral light, we conclude that the evidence supporting guilt is
not so weak that the verdict is clearly wrong and manifestly unjust or that the
evidence contrary to the verdict is not so strong that the
beyond-a-reasonable-doubt burden of proof could not have been met. 

The judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

November 3, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel consists of:  Wright,
C.J., and McCall, J.

Strange, J., not participating.











     [1]In
addition to testifying at trial, appellant signed a written statement acknowledging
the act.