**Opinion issued December 10, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00178-CR

———————————

## MOHAMED KAMARA BAIMBA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 174th District Court
Harris County, Texas
Trial Court Case No. 1484829

## MEMORANDUM OPINION

A jury convicted appellant Mohamed Kamara Baimba of the offense of capital

murder.[1] Because the State did not seek the death penalty, the trial court

---

[1]     *See* TEX. PENAL CODE § 19.03(a)(2) (stating that person commits offense of capital murder if he "intentionally commits the murder in the course of committing or attempting to commit . . . robbery").

automatically assessed appellant's punishment at imprisonment for life without parole. In two issues, appellant argues that: (1) the evidence is insufficient to support his conviction; and (2) section 12.31(a)(2) of the Texas Penal Code violates the protections against cruel and unusual punishment set forth in the Eighth Amendment of the United States Constitution and in Article I, section 13 of the Texas Constitution because it imposes the automatic punishment of life imprisonment without parole, without allowing the defendant to offer mitigating evidence. We affirm the trial court's judgment.

## Background

Appellant and the complainant, Tahorma Stephen Gboyah, were part of the same small West African community in Houston. Gboyah, who had been appellant's father's best friend, often helped his neighbors by giving them rides to medical appointments and buying groceries for them.

On October 8, 2015, Baby Bah went to Gboyah's apartment after she had been unable to reach him. The apartment's front door was unlocked, and the television had been unplugged and was sitting on top of the sofa in living room. When she looked inside the bedroom, Bah saw Gboyah lying naked on the floor with his hands bound behind his back. She then ran to the apartment complex's leasing office and called the police.

Upon arriving at the scene, the police found Gboyah's body on the floor next to the bed. His face was bruised and swollen, and he had blood in his ears, eyes, and mouth. His hands were secured behind his back with an appliance cord, and belts had been tied around his neck and around his upper left arm. The bedroom was in disarray, and there was blood on the mattress and pillows and blood spatter on the walls and headboard. The forensic pathologist later determined that Gboyah's cause of death was ligature strangulation with blunt force injuries.

During their investigation, the police learned that Gboyah's car, a gold Honda Accord, was missing from the parking lot and they found appellant's state-issued identification card on the bedroom floor approximately one foot away from Gboyah's head. The police also learned that twenty-three-year-old appellant had been staying with Gboyah for a few days. Appellant was arrested the next day while driving Gboyah's car.

Appellant gave a recorded statement to police several hours later during which he confessed to beating up Gboyah, tying him up, and then stealing his car. Specifically, appellant told the police that his father had kicked him out of their apartment after they had a dispute about the rent. Appellant, who had nowhere to go and no one else who would help him, turned to his father's friend Gboyah for help. Gboyah told appellant that he could stay with him. Appellant, who stayed with

3

Gboyah for two or three days, told police that he had hoped to stay with Gboyah for a few months until he could save up enough money to get his own apartment.

Appellant told the officer that Gboyah made him uncomfortable from the day he moved in by walking around the apartment naked, acting overly affectionate, and insisting on sharing his bed with appellant. Appellant told police that one night he came back to the apartment after work and found Gboyah lying naked in bed. When appellant told Gboyah that he was going to sleep on the floor in the bedroom, Gboyah became angry and told appellant that he had to leave in the morning. Appellant then made a place for himself on the floor and Gboyah went to the bathroom. When Gboyah returned, he stood over appellant in such a way that appellant, who had been raped as a child, believed that Gboyah was going to rape him. Appellant told the police that he kicked Gboyah in the balls and then the men began to fight.

Appellant claimed that he felt like he was fighting for his life and he "flipped." When he realized that he was winning the fight, appellant decided to tie up Gboyah and leave him naked on the floor for others to find because he wanted them to know that Gboyah was a homosexual and a rapist.

Appellant told the officer that after he tied up Gboyah, he realized that he needed to leave. He thought about how Gboyah "had so much and [he] had so little" and he considered stealing Gboyah's television and pawning it to buy groceries, but

4

he decided against it and left the television on the sofa. He then took Gboyah's keys and left in the car. Appellant told police that he had nowhere to go after he left Gboyah's home and he had been sleeping in a vacant apartment.

The jury found appellant guilty of the charged offense of capital murder and because the State did not seek the death penalty, appellant's punishment was automatically assessed at imprisonment for life. Appellant did not object to his sentence. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant argues that there is insufficient evidence to prove that he formed the intent to rob Gboyah before or during the commission of the murder.

## A. Standard of Review and Applicable Law

We review an appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all the evidence in the light most favorable to the jury's verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Our review includes all of the evidence introduced, whether it be

properly or improperly admitted. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

"The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Merritt*, 368 S.W.3d at 525 (citing *Jackson*, 443 U.S. at 319). As the sole factfinder, the jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We afford almost complete deference to the jury's determinations of credibility. *See id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict and defer to that determination. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Canfield*, 429 S.W.3d at 65. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence, alone, can be sufficient. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

A person commits the offense of capital murder, as charged in the instant case, if he intentionally commits murder in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE § 19.03(a)(2). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he "intentionally, knowingly, or recklessly causes bodily injury to

6

another." TEX. PENAL CODE § 29.02(a). "In the course of committing" the offense describes "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense." *Dawkins v. State*, 495 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993)).

For a murder to qualify as capital murder in this context, the intent to rob must be formed prior to or concurrent with the murder. *Robertson*, 871 S.W.2d at 705. Proof that the robbery was committed as an afterthought and unrelated to the murder is not sufficient. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002).

The defendant's requisite intent to commit the offense may be inferred from his actions or conduct. *Robertson*, 871 S.W.2d at 705. A robbery occurring immediately after a murder will support an inference that the murder was intended to facilitate the robbery. *See Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002)); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989) ("We have held numerous times that this aggravating element [murder in the course of committing robbery] is sufficiently proven if the State proves the robbery occurred immediately after the commission of the murder.").

**B.      Analysis**

Citing to *Ibanez v. State*, appellant argues that the evidence is insufficient to support his conviction because the State, which offered his confession into evidence, failed to disprove beyond a reasonable doubt his exculpatory statement to police that he did not form the intent to rob Gboyah until after he had tied up Gboyah. *Id.*, 749 S.W.2d 804, 808 (Tex. Crim. App. 1986). The basis for this common law principle was the so-called "voucher rule," by which each party was held to the verity of its own witnesses' testimony. In *Russeau v. State*, which was decided four years after *Ibanez*, the Texas Court of Criminal Appeals held that the "voucher rule" had been "rejected with the enactment of [Texas Rule of Evidence] 607." *See Russeau v. State*, 785 S.W.2d 387, 390 (Tex. Crim. App. 1990) (en banc); *see also* TEX. R. EVID. 607 (allowing credibility of witness to be attacked by any party, including party calling witness); *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999) (stating rule 607 "abandon[ed] the traditional 'voucher' rule which prohibited a party from impeaching its own witness"). Because *Ibanez* was based on the now defunct "voucher rule," appellant's reliance upon *Ibanez* is unavailing.[2]

---

[2]      The dissent in *Ibanez* noted that the voucher rule "seems to be abolished by the soon-to-be-effective Texas Rules of Criminal Evidence" because "[t]he rationale behind the voucher rule is effectively destroyed by Rule 607." *Ibanez v. State*, 749 S.W.2d 804, 812 (Tex. Crim. App. 1986) (David, J., dissenting). In a footnote, the majority acknowledged the truth of the dissent's assessment of the future of the voucher rule but stated that the appellant is entitled to rely on existing law, not future changes to the law. *Id.* at 807 n.3.

Nevertheless, appellant argues that *Russeau* was wrongly decided and urges this court to reconsider the applicability of the voucher rule and apply it in this case, as it was in *Ibanez*. "When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis." *Guzman v. State*, 539 S.W.3d 394, 404 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (quoting *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also State of Tex. ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."). Accordingly, we decline the invitation to reconsider the propriety of *Russeau*.

Here, the record reflects that appellant had been kicked out of his father's home, and he had nowhere else to go until Gboyah agreed to take him in. Gboyah became angry with appellant after he refused to sleep in the same bed as Gboyah and he told appellant that he had to leave the next morning. Appellant killed Gboyah soon afterwards and then fled the scene in Gboyah's car. He admitted to the police that he also considered stealing Gboyah's television and pawning it to buy groceries, but he decided against it and left the television on the sofa. Appellant, who did not

9

have anywhere to stay after he killed Gboyah, slept in a vacant home before he was arrested while driving Gboyah's car.

In light of this evidence, the jury could have rationally inferred that appellant decided to steal Gboyah's car and other valuable items either before or during the commission of the murder. *See Cooper*, 67 S.W.3d at 224; *Robertson*, 871 S.W.2d at 705; *McGee*, 774 S.W.2d at 234. Furthermore, as the sole factfinder, it was the jury's responsibility to assess the credibility of the witnesses and weigh the evidence. *See Canfield*, 429 S.W.3d at 65. In doing so, the jury was free to disbelieve any or all of the evidence or testimony proffered. *See id*. The jury could have rationally disregarded appellant's self-serving testimony that his decision to take Gboyah's car was an after-thought and that he did not form the intent to rob Gboyah until after he had beaten him and left him tied up on the bedroom floor. *See id.*; *Robertson*, 871 S.W.2d at 705 (defining "in the course of committing" to include conduct occurring "in the immediate flight after the attempt or commission of the offense"); *see also Cooper*, 67 S.W.3d at 224 (holding jury could have rationally disbelieved defendant's self-serving testimony that he did not know what he was doing when he took the victim's vehicle immediately after assault).

We therefore hold that the State presented sufficient evidence from which a rational jury could conclude, beyond a reasonable doubt, that appellant killed

Gboyah in the course of committing robbery and, thus, committed capital murder. *See* TEX. PENAL CODE § 19.03(a)(2).

We overrule appellant's first issue.

## Cruel and Unusual Punishment

In his second issue, appellant argues that the automatic punishment of life imprisonment without parole violates the Eighth Amendment of the United States Constitution and article I, section 13, of the Texas Constitution because it deprives defendants in non-death penalty capital cases of the opportunity to present mitigating evidence during an individualized sentencing hearing. *See* U.S. CONST. amend. VIII (prohibiting "cruel and unusual punishment"); TEX. CONST. art. I, § 13 (prohibiting "cruel or unusual punishment").[3]

Generally, the right to be free from cruel and unusual punishment is a waivable right that must be preserved for appellate review. TEX. R. APP. P. 33.1(a); *see Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (holding that defendant waived complaint regarding violation of state constitutional right against cruel and unusual punishment because complaint was raised for first time on appeal); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding that defendant

---

[3]    *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) (finding no significance in differences between Eighth Amendment's "cruel and unusual" phrasing and Texas Constitution's "cruel or unusual" phrasing); *Duran v. State*, 363 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (following *Cantu*).

waived complaint that punishment was cruel and unusual under Eighth Amendment when complaint was raised for first time on appeal); *see generally Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding facial challenge to constitutionality of statute is right that can be forfeited by failure to object at trial).

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a). Appellant did not assert that his mandatory life sentence violated the constitutional prohibitions against cruel and unusual punishment at the time his sentence was assessed, nor did appellant raise this issue in a post-trial motion. By failing to assert his complaint in the trial court, appellant failed to preserve this issue for appeal. *See* TEX. R. APP. P.; *Rhoades*, 934 S.W.2d at 120; *Curry*, 910 S.W.2d at 497.

Even if appellant had preserved this issue for our review, however, he would not prevail on the merits. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the United States Supreme Court held that the imposition of mandatory life imprisonment without the possibility of parole did not violate the Eighth Amendment's protection against cruel and unusual punishment. *See id.* at 995–96. In *Miller v. Alabama*, the Court revisited this issue with respect to juvenile offenders and held that the imposition of mandatory life imprisonment without the possibility of parole constituted cruel and unusual punishment with respect to juveniles under the age of

18. 567 U.S. 460, 489 (2012). In deciding *Miller*, the Court expressly limited its holding to cases involving juvenile offenders and declared that it "neither overrules nor undermines nor conflicts with *Harmelin*." *Id.* at 480–82.

Appellant argues that this mandatory sentencing scheme violates the constitutional prohibitions against cruel and unusual punishment under the Eighth Amendment and Article I, section 13 because it deprives defendants in non-death penalty capital cases of the opportunity to present mitigating evidence during an individualized sentencing hearing. Relying upon *Harmelin*, this court has previously rejected similar arguments challenging the constitutionality of section 12.31(a)(2). *Cormier v. State*, 540 S.W.3d 185, 194 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (refusing to extend *Miller* to adult-offenders); *Lopez v. State*, 493 S.W.3d 126, 139 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (addressing *Miller*'s language and concluding that *Miller* did not alter *Harmelin*).

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

Do Not Publish.   TEX. R. APP. P. 47.2(b).