

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00689-CR

Derrick Wayne **HUNT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR10485
The Honorable Melisa Skinner, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 28, 2014

AFFIRMED AS MODIFIED

A jury found Derrick Wayne Hunt guilty of capital murder, and the trial court sentenced him to life in prison without the possibility of parole.  On appeal, Hunt raises issues involving the Confrontation Clause, admission of purported hearsay evidence, alleged jury charge error, and assessment of court costs and attorney's fees.  We modify the trial court's judgment with regard to court costs and attorney's fees and affirm the judgment as modified.

**BACKGROUND**

In the early morning hours of October 10, 2011, John Dexter, a taxi driver in San Antonio, was dispatched to Foss Meadows Drive. Dexter activated his meter at 3:48 A.M. At 4:03 A.M., Dexter stopped at a nearby convenience store and purchased a pack of gum with a twenty dollar bill and received $19.62 in change. On his way out of the store, Dexter encountered San Antonio Police Department Officer James Phelan, who was taking a break. Dexter told Officer Phelan that he believed his current customer would not pay the fare. Officer Phelan offered to speak with the customer, but Dexter declined, stating that he would call the police if the fare was not paid. Officer Phelan observed a black male sitting in the back seat of the taxi before Dexter left and drove away at 4:05 A.M.

Several minutes later, Daniel Solis was sleeping in his home on Sunrise Pass when he was awakened by five to six loud banging noises. He looked out his front window and observed Dexter's taxi in the street with the engine running. After several minutes, the taxi slowly moved forward and collided with the back of a parked vehicle. Solis went outside to investigate and found Dexter sitting in the driver's seat, bleeding. Solis opened the driver's door, placed the taxi in park, and called 911. Officer Phelan, the first officer to respond to the scene, arrived at 4:15 A.M. He encountered Solis standing in the street and observed Dexter unconscious in the driver's seat, still restrained by his seatbelt. Officer Phelan observed that Dexter had been shot several times and had no pulse. The medical examiner later determined that Dexter was shot six times in his head and upper body. The medical examiner testified that the bullets were fired from behind Dexter at an intermediate close range. Spent shell casings and bullet fragments found at the crime scene were consistent with bullets fired from a semi-automatic handgun. No money was found at the crime scene, except for sixty-two cents found in Dexter's pocket.

Police investigators subsequently discovered footprints in the mud consistent with someone traveling way from the taxi, through a fenced backyard, and toward the street neighboring Sunrise Pass. The taxi company provided a recording of the phone call placed by Dexter's final customer requesting taxi service from Foss Meadows Drive. On the recording, the caller identified himself as "Tyrone Callahan." Police eventually tracked the phone number of the caller to a cell phone registered to Marsheila Williams and used by her son, Carnel Walker.

Walker testified that he and several friends, including Hunt, went to a nightclub on the night of October 9, 2011. Afterwards, the friends met at a fast food restaurant. Walker left the restaurant with a friend, who drove him home. Several hours later, Savawn Kyle gave Hunt and Terrance Scott a ride to Scott's home. Upon arriving at Scott's home, Hunt asked Kyle to take him to Walker's home. During the ride, Hunt asked Kyle to instead take him to Hunt's grandparents' home. Kyle declined and dropped Hunt off at Walker's home. Hunt knocked on the front door and spoke with Walker in the front yard. Walker refused to allow Hunt to sleep at his house because Walker's mother had a policy prohibiting overnight guests. Walker gave Hunt the phone number for a taxi and allowed Hunt to use his cell phone. Walker testified that Hunt called for a taxi using the name "Tyrone." Before the taxi arrived, Walker went back inside to sleep, but instructed Hunt to leave his cell phone inside and lock the door behind him.

The next morning, police contacted Williams and asked her come to the police station to discuss a homicide investigation. Williams relayed this information to Walker and then went to the police station. While she was away, Walker buried his cell phone in a neighbor's backyard. Walker subsequently consented to an interview with police detectives and told them that Hunt called him after leaving his house and stated that he had killed someone. Walker also told police that he observed that Hunt had a black semi-automatic handgun on the morning of the murder. At trial, Walker remembered telling police the information, but could no longer recall whether the

information was true. Walker subsequently led police to his buried cell phone. He testified that he buried the phone because he was scared after learning that his mother was being questioned regarding a homicide.

Hunt's grandparents' home is located on the street behind Sunrise Pass, the site of the murder. Hunt's grandfather, William Bell, told police that Hunt knocked on his door during the 4:00 A.M. hour on October 10, 2011. Bell allowed Hunt into the house where he went to sleep. Bell testified that at the time, he heard police sirens and a helicopter and could see flashing emergency lights on the neighboring street. Bell subsequently allowed investigators to search Hunt's room, but they found nothing connecting Hunt to the crime scene. Police did, however, recover a latent fingerprint on the exterior of the taxi matching Hunt's fingerprint. Hunt consented to an interview with police, but denied that he had been in a taxi on the morning of the murder, claiming that he had received a ride home from his girlfriend, Raquel Fumbanks. During the interview, investigators asked Hunt to pronounce several street names, including "Callaghan." Immediately thereafter, Hunt requested to terminate the interview. At trial, Fumbanks denied that she ever gave Hunt a ride home. After listening to the recording of the phone call requesting taxi service, she identified the voice of "Tyrone Callahan" as that of Hunt.

## ADMISSION OF COMPLAINANT'S STATEMENTS

Hunt contends the trial court's denial of his motion to suppress Dexter's statements to Officer Phelan was erroneous because the statements violated his constitutional right to confront witnesses and also constituted inadmissible hearsay.

*A. Motion to Suppress*

Consistent with his testimony at the suppression hearing, Officer Phelan testified as follows, at trial, regarding his exchange with Dexter:

Q: And this cabdriver that came in, did he strike up a conversation with you?

A: Yes. He — he was friendly. He walked in. And myself and the clerks were kind of talking with each other and stuff like that. And he said that there might be some excitements [sic] on that night. That he felt like that the — his passenger was going to jump the — jump the fare. He was going to take off on the fare. I said, Do you want me to go check him out? And he said, No, I'll just give you a call. And I saw him walk out the door. And I said, Okay, well just let us know. And I watched him drive away.

Officer Phelan testified that although Dexter was "apprehensive," he did not appear to be afraid and was smiling and laughing during the encounter.

When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial court's ruling, giving "almost total deference to a trial court's determination of historical facts that are supported by the record, particularly if the findings of fact are based on credibility and demeanor." *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012). Questions of law and mixed questions of law and fact that do not turn on the evaluation of credibility and demeanor are reviewed *de novo*. *Id.* at 262–63. A trial court's determination of whether the Confrontation Clause has been implicated by a testimonial statement is a question of law that we review *de novo*. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

The Sixth Amendment's Confrontation Clause provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This fundamental constitutional right is applicable to both federal and state prosecutions by virtue of the Fourteenth Amendment. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). Even if a statement is otherwise admissible under evidentiary rules, it may be barred by the Confrontation Clause if the defendant is not afforded an opportunity to confront the out-of-court declarant who provides testimonial evidence. *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). The Confrontation Clause bars the admission of "testimonial" evidence at trial unless the witness who made the statement either: (1) testifies subject to cross-examination

at trial; or (2) is unavailable and the defendant had a prior opportunity to cross-examine him. *Melendez-Diaz v. Mass.*, 557 U.S. 305, 309 (2009); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013).

What constitutes "testimonial" evidence has continued to be defined by the courts. *Burch*, 401 S.W.3d at 636; *see Crawford v. Washington*, 541 U.S. 36, 68 (2004) (expressly declining to provide a comprehensive definition of what evidence is "testimonial"). A statement is testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting *Crawford*, 541 U.S. at 51–52). At a minimum, testimonial statements are those which are "formal and similar to trial testimony." *Burch*, 401 S.W.3d at 636. Thus, testimonial evidence includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,]" as well as "[s]tatements taken by police officers in the course of interrogations." *Crawford*, 541 U.S. at 52, 68. Statements made in response to police inquiries are non-testimonial, however, when the circumstances of the interrogation "objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 828 (2006).

Thus, the testimonial nature of an interrogation is determined by objectively evaluating its "primary purpose." *Michigan v. Bryant*, 131 S.Ct. 1143, 1160 (2011). In making this determination, the focus is not on the "subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* at 1156. "If the objective purpose of the interview is to question a person about past events and that person's statements about those past events would likely be relevant to

a future criminal proceeding, then they are testimonial." *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011).

Hunt concedes that Dexter's encounter with Officer Phelan cannot be characterized as an interrogation. Nevertheless, he contends that Dexter's statements were testimonial because he made them to a police officer, they were later used in a criminal prosecution, and they were not made in the context of an ongoing emergency.

Evaluating the circumstances of the encounter objectively, we cannot conclude that Dexter would have reasonably believed that the primary purpose of his statements was to "establish or prove *past events* potentially relevant to a later criminal prosecution." *Bryant*, 131 S.Ct. at 1154–55 (emphasis added) (quoting *Davis*, 547 U.S. at 822). Most critically, the encounter occurred before the crime was committed and there is nothing to suggest that Dexter anticipated his imminent murder. *See Brown v. Epps*, 686 F.3d 281, 288 (5th Cir. 2012) (holding that statements were not testimonial when they concerned future criminal activity and the declarants could not have reasonably anticipated a trial). At most, Dexter's statement reflected his belief that he may soon be the victim of the crime of theft of service.[1] Even then, he could not have reasonably believed that his statement would be useful in any later trial for that offense because any evidence of theft by service would have consisted of Dexter's testimony of the actual event, not testimony of his earlier predictive statements to Officer Phelan.

Moreover, the informal circumstances of the encounter support a conclusion that Dexter's statements were not testimonial. *See Bryant*, 131 S.Ct. at 1166 (considering the informality of an encounter); *United States v. Polidore*, 690 F.3d 705, 712 (5th Cir. 2012) (identifying "level of formality" as a factor); *Burch*, 401 S.W.3d at 636 (stating that testimonial statements are formal).

---

[1] Presuming "intent to avoid payment" if "the actor absconded without paying for the service . . . ." TEX. PENAL CODE ANN. § 31.04(b)(1) (West Supp. 2013).

Although statements to the police tend to indicate a more formal encounter, such is not the case when, as here, there was no interrogation and the exchange was initiated by the witness/declarant. *Spencer v. State*, 162 S.W.3d 877, 882 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (spontaneous statement to police not testimonial); *Wilson v. State*, 151 S.W.3d 694, 698 (Tex. App.—Fort Worth 2004, pet. ref'd) (interaction initiated by witness/declarant not testimonial); *Lagunas v. State*, 187 S.W.3d 503, 520 (Tex. App.—Austin 2005, pet. ref'd) (statements given in response to police officer's preliminary questions not testimonial where officer did not have time to formulate structured questioning). The record establishes that Dexter engaged Officer Phelan in casual conversation as Dexter was walking out of the store, speaking to him for a little over a minute. Although Dexter expressed concern about his customer, he declined Officer Phelan's offer of assistance and was smiling and laughing. These facts illustrate a chance encounter followed by a jovial exchange, far from the "solemn declaration" characteristic of a testimonial statement. *Crawford*, 541 U.S. at 51.

Accordingly, we hold that Dexter's statements to Officer Phelan were not testimonial. The trial court did not err in determining that their admission was not barred by the Confrontation Clause.

### B. Hearsay Evidence

A statement not barred by the Confrontation Clause may still be inadmissible under the rules of evidence. *See Gonzalez*, 195 S.W.3d at 116. A non-constitutional error resulting in the admission of hearsay evidence is harmless, however, if it does not affect the "substantial rights" of the defendant. TEX. R. APP. P. 44.2(b); *see Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (erroneous admission of hearsay is non-constitutional error). Such an error is reversible "only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). We will not overturn the

conviction "if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but [a] slight effect." *Id.* In reviewing the record, we consider "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

We will assume, without deciding, that Dexter's statements to Officer Phelan were inadmissible hearsay. Hunt argues the admission of the statements was not harmless because without them, the jury had insufficient evidence with which it could have found that he committed robbery, the offense that aggravated the murder to capital murder. After reviewing the entire record and all evidence presented to the jury, we disagree.

The jury was presented with strong circumstantial evidence to support its finding that Hunt murdered Dexter. Kyle testified that he drove Hunt to Walker's house on the morning of the murder. During the drive, Hunt indicated his desire to go to his grandparents' house. Walker told police that when Hunt came to his house, he was carrying a semi-automatic handgun. Walker testified that Hunt used Walker's cell phone to call a taxi and used the alias "Tyrone." A recording of the phone call requesting the taxi service was played to the jury wherein the caller identifies himself as "Tyrone Callahan." Fumbanks, Hunt's girlfriend, testified that the voice of the caller on the recording belonged to Hunt. Hunt's grandmother testified that Hunt called her around this time to tell her he would be home shortly. Phone records corroborated the phone calls from Walker's cell phone to the taxi service and to Hunt's grandmother. The taxi's computer system documented that Dexter picked up a passenger at Walker's house several minutes after the call requesting service. A few minutes after that, Dexter stopped at the convenience store, and Officer Phelan observed a black male sitting in the back seat of the taxi. Hunt is a black male. Electronic

GPS records maintained by the taxi service established that Dexter made no stops between the convenience store and the crime scene. Several minutes after Dexter left the store, Solis was awakened by loud banging and subsequently discovered Dexter's lifeless body in the taxi. Dexter was shot from behind six times with a semi-automatic handgun. Hunt's fingerprint was later found on the outside of the taxi. Muddy footprints led from the area of the taxi and to the neighboring street where Hunt's grandparents lived. Hunt's grandfather testified that shortly after the time of the murder, Hunt knocked on his front door as first responders were descending on the nearby crime scene. Walker told police that after Hunt left his house, Hunt called and told Walker that he had killed someone. Phone records indicated several calls from Hunt's grandparents' home phone to Walker's cell phone between 4:12 A.M. and 5:14 A.M. and one call from Walker's cell phone to Hunt's grandparents' home phone at 5:42 A.M. From this evidence, a rational juror could conclude that Hunt was Dexter's only passenger and was his murderer.

The jury was also presented with evidence that Dexter was robbed by his murderer. Video surveillance and records from the convenience store established that Dexter had $19.62 in cash when he left the store, but when his body was found minutes later, he only had sixty-two cents in change. A rational juror could conclude that the same person who murdered Dexter also took the nineteen dollars. Because Dexter was murdered "in the course of committing theft," the jury could rationally conclude that Hunt committed robbery and thus, capital murder. *See* TEX. PENAL CODE ANN. § 29.02 (West 2011); TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013). All of these rational inferences could be made without evidence of Dexter's statement anticipating that Hunt would not pay the fare. Accordingly, we hold that the evidence of Dexter's statements to Officer Phelan had no substantial influence on the jury's verdict and had but only a slight effect. *See Amador v. State*, 376 S.W.3d 339, 345 (Tex. App.—Houston [14th Dist. 2012, pet. ref'd) (admission of victim's statement to police officer identifying robber harmless where identity

established by other evidence); *see also Barnum v. State*, 7 S.W.3d 782, 791 (Tex. App.—Amarillo 1999, pet. ref'd) (admission of victim's hearsay statement predicting own murder by defendant harmless given strong circumstantial evidence establishing the same).

### ACCOMPLICE WITNESS INSTRUCTION

In his next point of error, Hunt contends that he was entitled to a jury instruction on accomplice witness testimony pursuant to Article 38.14 of the Texas Code of Criminal Procedure[2] because the evidence established that Walker was an accomplice-in-fact. The trial court denied the instruction after determining that Walker was not an accomplice. Hunt contends that the question of whether Walker was an accomplice should have been submitted to the jury. The State argues that the evidence clearly establishes that Walker was not an accomplice, neither as a matter of law nor as a matter of fact.

If the evidence clearly shows that an accomplice witness is an accomplice as a matter of law, the trial court must provide the accomplice-witness jury instruction. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). A witness is an accomplice as a matter of law when "the witness has been, or could have been indicted for the same offense . . . or a lesser-included offense." *Id.* "If, however, the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must first determine whether the witness is an accomplice as a matter of fact." *Id.* If "the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact," the trial court is not required to give the jury instruction. *Id.*

"An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225

---

[2] "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE. CRIM. PROC. ANN. art. 38.14 (West 2005).

S.W.3d 491, 498 (Tex. Crim. App. 2007). To be an accomplice, a witness's "participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged." *Id.* A witness is not an accomplice merely because he was present at the crime scene or because he concealed knowledge of the offense. *Id.*

Hunt contends that Walker was an accomplice because he: (1) provided the cell phone Hunt used to call the taxi; (2) provided Hunt with the phone number for the taxi service; (3) knew that Hunt used an alias to request the taxi; and (4) knew that Hunt was carrying a gun. Hunt also contends that Walker was an accomplice because he buried the cell phone after Hunt told him that he had murdered the taxi driver and after he learned that the phone was the subject of a homicide investigation.

We disagree with Hunt's contentions and conclude the evidence clearly establishes that Walker was not an accomplice to the murder. Walker could not have reasonably believed that Hunt would murder Dexter merely because Hunt used an alias and carried a gun. Thus, Walker did not commit an affirmative act to promote the murder "with the required culpable mental state" by merely facilitating Hunt's call to the taxi service. *See Paredes v. State*, 129 S.W.3d 530, 536, 537–38 (Tex. Crim. App. 2004) (witness not an accomplice where evidence suggested that witness may have suspected foul play but no evidence that witness assisted in the preparation or planning of murders); *see also Bell v. State*, No. 01-10-00873-CR, 2012 WL 1649889, at*6 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op., not designated for publication) (evidence that witness knew or should have known that her conduct was wrongful not sufficient to establish the culpable mental state necessary to be an accomplice for murder). Further, the fact that Walker buried his cell phone after learning that it was evidence in the murder investigation is not an affirmative act which promoted the commission of the murder. *See Druery*, 225 S.W.3d at 500 (witness who assists in disposal of murder weapon not an accomplice because not an affirmative

act promoting commission of offense); *see also McCallum v. State*, 311 S.W.3d 9, 14 (Tex. App.—San Antonio 2010, no pet.) (witness who disposed of evidence after the crime not an accomplice); *see also Roys v. State*, 416 S.W.3d 229, 234 (Tex. App.—Amarillo 2013, pet ref'd) (same).

Accordingly, because the evidence clearly established that Walker was not an accomplice, the trial court did not err in denying the accomplice-witness instruction in the jury charge.

### LESSER INCLUDED OFFENSE INSTRUCTION

Hunt contends the trial court erred when it denied his request to instruct the jury on a lesser included offense of murder. Hunt was charged with capital murder for committing murder while in the course of committing or attempting to commit a robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2013). Hunt contends that he was entitled to the instruction because there is some evidence that someone other than Hunt took Dexter's money.

To determine whether a defendant is entitled to a lesser included offense instruction, we employ a two-step analysis. *Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013). The first step is to determine whether "the proof necessary to establish the charged offense also includes the lesser offense." *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). If it does, the second step requires the court to consider "whether the evidence shows that if the [defendant] is guilty, he is guilty only of the lesser offense." *Id.* at 382. There is no dispute that the proof necessary to establish capital murder also includes the proof necessary to establish murder. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004); *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). Thus, the dispute in this case centers on the second step.

"A defendant is entitled to an instruction on a lesser-included offense if some evidence from any source raises a fact issue on whether he is guilty of only the [lesser-included offense] . . . ." *Cavazos*, 382 S.W.3d at 383. The amount of evidence required to raise a fact issue is anything "more than a scintilla." *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994);

*Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). In evaluating this evidence, we do not consider "whether it is disputed or [whether it] conflicts with other evidence," as that falls within the province of the fact-finder. *Dale v. State*, 90 S.W.3d 826, 832 (Tex. App.—San Antonio 2002, pet. ref'd). Rather, we consider whether the evidence presented "refutes or negates other evidence establishing the greater offense or . . . [whether it] is subject to different interpretations." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 871 S.W.2d 701, 706 (Tex. Crim. App. 1993)). The evidence, however, "must be sufficient to establish the lesser-included offense as a 'valid, rational alternative' to the charged offense." *Cavazos*, 382 S.W.3d at 385 (quoting *Hall*, 225 S.W.3d at 536). As the Court of Criminal Appeals in *Cavazos* explained:

> If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative. While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if [the defendant] is guilty, he is guilty only of the lesser-included offense. Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense.

*Id.* (citations omitted).

Hunt argues that the only evidence that Hunt committed a robbery is circumstantial evidence establishing that Dexter had $19.62 in cash when he left the convenience store, but only had sixty-two cents in his pocket when his body was discovered less than ten minutes later. Hunt argues that it is equally plausible that Solis, the man who discovered Dexter's body, took the money before Officer Phelan arrived on the scene. Thus, Hunt argues that he was entitled to a jury instruction on murder because the evidence of Solis's mere presence at the crime scene, albeit a small amount of evidence, raises the possibility that Hunt did not commit a robbery, but rather that Solis committed a theft. Accordingly, we must determine whether Hunt's theory is a "valid,

rational alternative" that is supported by "more than a scintilla of evidence," as opposed to "mere speculation." *Cavazos*, 382 S.W.3d at 385.

In making this determination, an appellate court "must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum." *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000). A review of the entire record reveals no evidence to establish Hunt's theory as a valid and rational alternative. Solis testified that upon discovering the bloody crime scene, he placed the taxi in park, immediately called 911, and began searching neighboring yards with his flashlight. Officer Phelan arrived several minutes later and discovered Solis standing in the middle of the street, understandably upset by the incident. Hunt's theory that Solis took Dexter's money but also called 911 and remained on the scene to assist police is simply not rational and is at most, purely speculative. *See Contreras v. State*, 915 S.W.2d 510, 521 (Tex. App.—El Paso 1995, writ ref'd) (defendant's claim that someone else took money was speculative and not sufficient to raise a fact issue regarding defendant's commission of robbery aggravating capital murder). Accordingly, the trial court did not err in denying a lesser-included offense instruction of murder.

### COURT COSTS AND ATTORNEY'S FEES

In its final judgment, the trial court assessed $371.50 in court costs in addition to an unspecified amount of attorney's fees. Hunt contends that the evidence is insufficient to support the trial court's assessment of court costs and attorney's fees. The State concedes that Hunt's status as an indigent defendant precludes the imposition of attorney's fees. The State requests that we affirm or modify the judgment in accordance with the bill of costs contained in a supplemental record.

A trial court may not assess the costs of legal services provided, including the cost of an appointed attorney, unless the trial court determines that the defendant has financial resources that

enable him to offset the costs. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2013); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App 2010). "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West 2009). The trial court determined that Hunt was indigent when it appointed an attorney to represent him, and the record contains no evidence of a material change in Hunt's financial circumstances. Accordingly, we hold that the trial court erred in assessing attorney's fees and modify the trial court's judgment to delete the assessment of attorney's fees. *See Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *Fulmer v. State*, 401 S.W.3d 305, 318–19 (Tex. App.—San Antonio 2013, pet. ref'd).

A trial court is authorized by statute to assess miscellaneous court costs and fees unrelated to the providing of legal services, regardless of a defendant's indigent status. *Owen v. State*, 352 S.W.3d 542, 546 (Tex. App.—Amarillo 2011, no pet.); *Wallace v .State*, No. 04-13-00202-CR, 2013 WL 5653247, at *1 (Tex. App.—San Antonio Oct. 16, 2013, no pet.) (mem. op., not designated for publication) (citing *In re Daniel*, 396 S.W.3d 545, 549–50 (Tex. Crim. App. 2013)). We will affirm a trial court's judgment assessing court costs if the basis for the costs is supported by the record. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Although not required to support an assessment of costs, the record may be supplemented to include a certified bill of costs. *Id.* at 392.

Included in the appellate record is a supplemental clerk's record containing a certified bill of cost prepared by the Bexar County District Clerk. Aside from the fees assessed for an appointed attorney, the bill of cost reflects miscellaneous administrative fees and costs totaling $334. The record contains no evidence to support an assessment in excess of $334. Accordingly, we reform the trial court's judgment to assess costs in the amount of $334. *See Dews v. State*, No. 04-12-

00240-CR, 2013 WL 3486821, at \*2 (Tex. App.—San Antonio Jul. 10, 2013, no pet.) (mem. op., not designated for publication).

## CONCLUSION

In conclusion, the admission of Dexter's statement to Officer Phelan did not violate the Confrontation Clause and even if it were inadmissible hearsay under the rules of evidence, its admission was harmless. The trial court did not err by not providing an accomplice witness instruction and Hunt was not entitled to a jury instruction on the lesser-included offense of murder. Lastly, we modify the judgment of the trial court to delete the assessment of attorney's fees and to reduce the court costs assessment to $334. The trial court's judgment is affirmed as modified.

Catherine Stone, Chief Justice

DO NOT PUBLISH